*J. E. McDonald, A. L. Roache,* and *E. M. McDonald,* for appellees.

---------o---------

### Spitler, Administrator, *v.* James and Another.

Estoppel.—*Promissory Note.—Indorser.*—Where one indorses the form of a promissory note, blank as to the date, time or place of payment, amount, or name of payee, or all these parts, and delivers it to the maker, and, in violation of instructions given by such indorser to the maker, there is afterwards written therein any stipulation usual to paper of the class indicated by the blank form, such endorser will be liable on the note according to its terms in the hands of a *bona fide* holder.

Same.—A person indorsed a form of a promissory note, blank as to all said parts, at the request of the maker and for his accommodation, stipulating verbally that the note when filled up should not be made payable at a bank, there being sufficient blank space for that purpose; and afterwards, without the knowledge or consent of such indorser, at the request of the payee, who had knowledge of such stipulation, the form was so filled as to make the note payable at a certain bank.

*Held,* that such indorser was liable on the note in the possession of one who received it for value, before due, in the usual course of business, without notice.

APPEAL from the Jasper Common Pleas.

Ray, J.—The appellees brought this action against the appellant, as administrator of the estate of George W. Spitler, deceased, upon a note payable at the Laporte Branch of the Bank of the State of Indiana, executed by Irwin & Hopkins to the said George W. Spitler, during his life, who

indorsed it to J. & D. S. Eason, by whom it was transferred, by indorsement, to the appellees.

The complaint is in two paragraphs. The first alleges the insolvency of Irwin & Hopkins and of J. & D. S. Eason when the note became due, as an excuse for the failure to sue them.

The second paragraph alleges the transfer of the note, by indorsement, to the appellees, for a valuable consideration, before due, in the ordinary course of business, and its protest for non-payment.

The appellant answered in denial, and also in three special paragraphs. A demurrer was sustained to the second paragraph, and this presents the only question argued by the appellant arising upon the pleadings. This paragraph averred, that when the said George W. Spitler indorsed the paper in suit, it was simply a printed blank form, as follows: "—— after date —— promise to pay to the order of —— $\overline{100}$ dollars for value received, without any relief whatever from valuation or appraisement laws;" that the decedent, at the request of the makers, and for their accommodation, placed his name on the back of said paper; that he was informed that the paper was to be passed to John Eason, in part payment for a stock of goods, and that he stipulated that the note, when filled, should not be made payable at a bank; "that afterwards said note was filled up as it now appears, and delivered to said John Eason, the words 'at the bank of the State of Indiana, at the Laporte branch,' being inserted at the special request of said John Eason, though at the time of said insertion, and at the time of the delivery of said note, said John Eason was informed of the stipulation aforesaid, made by said decedent, but notwithstanding such information, insisted upon and procured said words, 'at the bank of the State of Indiana, at the Laporte branch,' to be inserted in said note, which was done without the knowledge or consent of said decedent."

The note, as set out in the complaint, was in this form: "$1,739 $\frac{8}{100}$. Laporte, July 20th, 1860. Twenty-four

months after date we promise to pay to the order of George W. Spitler, at the bank of the State of Indiana, at the Laporte branch, seventeen hundred and thirty-nine $\frac{8}{100}$ dollars for value received, without any relief whatever from valuation, appraisement, or stay laws, with interest.   Irwin & Hopkins."

Indorsed, "Pay to the order of John Eason & D. S. Eason, who compose the firm of J. & D. S. Eason.   George W. Spitler."

"Pay to the order of James, Kent, Santee & Co.   John Eason, D. S. Eason, late firm of J. & D. S. Eason, in liquidation."

It will be observed that, in this case, we are not called upon to consider the effect of the alteration of a written instrument against the consent of a party to its execution—there was neither erasion nor interlineation—but the fact that the maker, whom the indorser intrusted with the right to fill certain blanks in the paper, fixing the amount, the date, the time of payment, and the payee, in disregard of his trust, "inserted," or included, after the name of the payee, in the blank space, a place where payable.   What are the consequences of this breach of trust upon the paper in the hands of an innocent holder?   In England the indorser would, perhaps, be discharged, because the courts there now hold the maker not chargeable with a simple breach of trust, but guilty of forgery.   *Awde* v. *Dixon*, 6 Exch. 869; *Rex* v. *Hart*, 1 Moo. C. C. 486; *Regina* v. *Wilson*, 1 Den. C. C. 284. But this is recent law in England, and has never been generally accepted as authority in this country.   *Bank of Mo.* v. *Phillips*, 17 Mo. 29.   *Russel* v. *Langstaffe*, 2 Doug. 514, was a case where one Galley, having had frequent transactions with the plaintiff, a banker, and having overdrawn his account, was refused any further advance without an indorser acceptable to the plaintiff.   Upon this, Galley applied to the defendant, and he indorsed his name on five copperplate checks, made in the form of promissory notes, but in blank, no sum, date, or time of payment being mentioned

in the body of the note. Galley afterwards filled up the blanks for different sums and dates as he chose. The plaintiff knew that the notes were blank at the time of their indorsement. In a suit upon these five notes, Lord MANSFIELD said, " The indorsement on a blank note is a letter of credit for an idefinite sum. The defendant said, ' trust Galley for any amount, and I will be his security.' It does not lie in his mouth to say, the indorsements were not regular."

The case of *Awde* v. *Dixon, supra,* was where the defendant agreed to join his brother in making a promissory note for his accommodation, provided R. would also join. The defendant accordingly signed an instrument in the form of a promissory note, a blank being left for the name of the payee. R. refused to join; and afterwards the defendant's brother delivered the imperfect instrument to the plaintiff for value, representing that he had authority to deal with it, and the plaintiff's name was inserted as payee. The court admit " the position, that a person who puts his name to a blank paper impliedly authorizes the filling of it up to the amount that the stamp will cover," but insist that the plaintiff could not recover, because the *prima facie* power to complete the instrument was coupled with a condition unknown to the plaintiff. In plain language, a party may clothe another with all the *indicia* of authority to complete an instrument to which he has attached his name in blank, and yet avoid liability, on the ground that he had imposed secret instructions upon the agent limiting his apparent general power.

The peculiar practice of the English bar, which sustains suggestive interruptions from the bench, furnishes here an instance—a rare one we trust—in which the law comes from the counsel, the sophism from the court.

The counsel assert, " where a person, intrusted with a negotiable instrument for a special purpose, delivers it to another, the mere contravention of the trust will not prevent the latter from recovering, if a *bona fide* holder for value and without notice." PARKE, B., responds, " This is a false

instrument." The fraternal faith that trusts a blank form, duly signed, to a brother's keeping, where such possession furnishes *prima facie* proof of a power to complete the instrument, may challenge our admiration for the confidence displayed; but that admiration would be chilled, were we told, that it involved no hazard, save to the stranger who trusted to the *prima facie* evidence of power this possession involved; that the brother, whose confidence was betrayed, was held harmless by the law, and the stranger who reposes no confidence, but acts upon what the law admits is *prima facie* evidence, must alone suffer.

· But this doctrine of forgery, as applied to a plain case of fraud, or breach of trust, was discussed by Chief Justice PARSONS, in *Putnam* v. *Sullivan*, 4 Mass. 45, where it was held, that when one indorsed a blank paper with the intention that something should afterwards be written to which the name should apply as an indorsement, the writing of the wrong thing was not a forgery, but a breach of trust, and he who had reposed the confidence must suffer alone, when it was violated and the rights of an innocent party involved. In that case the defendant, a merchant, had intrusted his clerk with his blank indorsements, and one, by false pretenses, obtained them from the clerk and used them, and it was decided that the filling of the blanks was not a forgery, nor was it such a fraud as would discharge the indorser against the indorsee who had paid value for the paper; and the liability was placed upon the ground that where one of two innocent parties must suffer, the loss should be sustained by him who has given the confidence and thus enabled the fraud to be perpetrated.

In *Orrick* v. *Colston*, 7 Grat. 189, it was held, that a paper signed in blank, and indorsed in blank, may be filled up either as a common promissory note or a negotiable note; and the person who indorsed it in blank will be liable on his endorsement to a holder for value.

In *Michigan Ins. Co.* v. *Leavenworth*, 30 Vt. 11, the rule was stated, that a *bona fide* holder of a bill of exchange had

the power implied to fill all the blanks in the bill. So it was held, in *Mechanics' and Farmers' Bank* v. *Schuyler*, 7 Cow. 337, that in the hands of a *bona fide* indorsee, the indorser cannot question the transaction, though the blanks may have been filled in a manner entirely different from the understanding and expectation of the indorser when he put his name upon the note.

In *Fullerton* v. *Sturges*, 4 Ohio St. 529, where F. and others, sureties for C., signed an instrument payable to S., or order, in blank as to date, amount, and time of payment, but with a private agreement that it should not be filled for more than one thousand or fifteen hundred dollars, and delivered it to C., the principal, to procure the discount, and the instrument was presented by C. to S., the payee, and filled up for the sum of ten thousand dollars, it was declared, that one who intrusts his name in blank to another to procure a discount, is liable to the full extent to which such other may see fit to bind him, where the paper is taken in good faith, without notice, actual or constructive, that the authority given has been exceeded; that such blank signature has the effect of a general letter of credit, and the rule is founded as well upon that principle of general jurisprudence which casts the loss, when one of two innocent persons must suffer, upon him who has put it in the power of another to do the injury; as, also, upon the rule of the law of agency which makes the principal liable for the acts of his agent, in violation of his private instructions, when he has held the agent out as possessing more enlarged authority. This case was approved in *Holland* v. *Hatch*, 15 Ohio St. 464. Parsons says of this *prima facie* evidence of authority to fill the blanks, that as between the immediate parties and all others who have notice of any limitation in the authority, this presumption may be rebutted, but as to *bona fide* purchasers without notice, it is conclusive. 1 Bills and Notes, 109. To the same effect is Edwards on Bills, 92 *et seq.*

Upon the question of what constitutes a *bona fide* holder, the law seems now well settled.

In *Michigan Bank* v. *Eldred*, 9 Wall. 544, it is said, that where "it clearly appeared that the plaintiffs were indorsers [indorsees] for value at the date of the note in the usual course of business, without notice of any equities between the antecedent parties, such a party is regarded, in the commercial law, as a *bona fide* holder of the negotiable instrument, and the rule is irrepealably established by the decisions of this court that the indorser [indorsee] under those circumstances takes the title unaffected by any equities between the antecedent parties to the instrument, and may recover thereon, although, as between the antecedent parties to the same, the transaction may be without any legal validity." The rights of the holder are to be determined by the simple test of honesty and good faith, and not by mere speculation as to his probable diligence or negligence. *Magee* v. *Badger*, 34 N. Y. 247; *Belmont Branch Bank* v. *Hoge*, 35 N. Y. 65; *Lord* v. *Wilkinson*, 56 Barb. 593.

The principle controlling the case of *Holland* v. *Hatch*, 11 Ind. 497, is not in conflict with the authorities we have cited. It is there stated, that "all blanks may be filled which are necessary or proper to make the instrument a perfect and complete bill of exchange or promissory note, as the case may be." It is denied that the addition of the words "without relief from valuation or appraisement laws," was necessary or proper to complete the bill, and their addition is held to avoid the instrument. This case was questioned in *Holland* v. *Hatch*, 15 Ohio St. 464, so far as it held the bill void by reason of the additional stipulation.

In this case, it was proper, to complete the note and render it negotiable by the law merchant, to make it payable at a bank. There was sufficient space for that purpose, and whatever question there may have been, while the note remained in the hands of a party having notice of the limitation on the authority of the maker imposed by the indorser,

no defense can be based upon such limitation when the paper has passed into the hands of a *bona fide* holder.

The principle which excludes defenses against instruments negotiable by the law merchant, in the hands of a purchaser before due, for value, and without notice of defects, would be violated by every exception introduced, and the value of such securities greatly lessened in the market.

The sole questions which should present themselves to one receiving such paper in the regular course of business are, whether the signatures are genuine and the paper unaltered. It is doubtless often convenient to indorse such instruments in blank and deliver the paper to the maker, but the act gives authority to the holder to fill the blanks in conformity to the general character of the paper, and involves confidence in the integrity of the person to whom this general authority is given. If, in violation of such trust, there be written within such blanks any stipulation, usual to paper of the class indicated by the blank form, a *bona fide* holder will be protected. It is not to be supposed that a court which has rigidly enforced the liability of a surety under circumstances involving the same principle in the case of an official bond, should hesitate in its application to a negotiable note.

We have held, that where the obligee accepts an instrument perfect in form and execution, which comes to him from the person who should have possession of the instrument for the purpose of such delivery, the obligee may accept it without further inquiry. The entire transaction, so far as the obligee is involved, is according to the ordinary and natural course. The surety, however, while he executes the instrument and places it in the usual channel for delivery, departs from the ordinary course of procedure by circumscribing the general authority by a condition unknown to the obligee. The condition is disregarded, a fraud is accomplished, and he who has not scrupled to trust his principal with the semblance of a general authority to make

the delivery, must stand the hazard he has incurred.     *The State, ex rel., &c.,* v. *Pepper,* 31 Ind. 76.     See, also, *Deardorff* v. *Foresman,* 24 Ind. 481, where the rule was applied to a note negotiable under the statute.

It appears by the complaint and answer that the note was indorsed in a blank form and, without alteration, erasure, or interlineation, was filled up as a note negotiable by the law merchant, and in that condition was, before due, and in the ordinary course of business, for value, transferred to the plaintiff.     The act of the decedent enabled the maker to put the paper in this condition into the market, and the consequences must rest upon his estate.     The demurrer was properly sustained to the paragraph, as it constituted no defense to the second paragraph of the complaint.

There was a trial and finding for the appellees.     A motion was made to tax all the costs of the proceeding to the appellees, on the ground that the complaint was not sworn to, and that it had not been filed against the estate within the time required by statute.     This motion was overruled. It appears by the transcript that there had been various continuances of the cause by agreement, and that by written stipulation one of these continuances was granted on the agreement that the appellant should pay any costs caused by him.     The motion was, therefore, too general, unless it was shown that there was no such costs included in the taxation.     We cannot indulge this presumption against the action of the court.

The judgment is affirmed, with costs.

FRAZER, C. J., was absent.

*J. E. McDonald, A. L. Roache, E. M. McDonald,* and *J. W. Nichol,* for appellant.

*W. C. Hannah, R. S. Dwiggins, S. P. Thompson, L. A. Cole,* and *E. L. Bennett,* for appellees.