No. 8444.

## CRONKHITE v. NEBEKER ET AL.

PROMISSORY NOTE.—*Material Alteration.—Inserting Name of Bank.—Bona Fide Purchaser.*—The maker of a promissory note, perfect in its terms, not negotiable by the law merchant, does not, by leaving a blank space in the body of the note, wherein words of negotiability may be so inserted as not to furnish an indication of the alteration, give an implied authority to the payee to insert therein the name of a bank; and such an insertion, without the authority of the maker, is such a material alteration of the note as will invalidate it in the hands of a *bona fide* purchaser, whether he has notice of the alteration or not.

SAME.—*Sale and Purchase of.—Purchaser Put upon Enquiry.*—The purchaser of a note, whether negotiable by the law merchant or not, is put upon enquiry as to its genuineness in all its material parts, by the mere fact that it is offered for sale; and if he omits to make enquiry of the maker, he buys at his own risk, and upon the faith of his immediate endorser, or of others, if any, to whom he may legally have recourse.

From the Warren Circuit Court.

*W. P. Rhodes* and *A. R. Owen*, for appellant.

*L. Nebeker* and *S. M. Cambern*, for appellees.

WOODS, J.—The appellant denied under oath the execution of the note upon which the appellees obtained judgment

against him.    There is no dispute in reference to the facts proved at the trial, and the question for decision is whether the finding of the court was right.

The appellant, who was at the time a man of intelligence and able to read both written and printed matter with ease, executed a promissory note of the tenor following, which he did then and there read, to wit:

"$75.    September 6th, 1877.    Twelve months after date, I promise to pay to the order of G. H. Fitzmaurice, at Covington, Indiana, seventy-five dollars, value received, without any relief from valuation or appraisement laws, with interest at ten per cent. per annum from date, and ten per cent. attorney's fees.    The drawers and indorsers severally waive presentment for payment, protest and notice of protest and nonpayment of this note.

[Signed]                              " LEVI A. CRONKHITE."

The note was prepared by the payee upon an ordinary printed blank, which was so arranged that there was one line in the blank in which there was no printed word except the word "at" printed at the left hand end of the line, and beginning about the middle of said line there were written the words "Covington, Ind.," leaving a space sufficient between the word "at" and the word "Covington," to insert the words "The Farmers Bank" in a handwriting corresponding with the written parts of the note.

At the time of making the note, the appellant objected to its being made payable at a bank, and thereupon the words "Covington, Ind.," were written in by the payee, who filled up the written parts of the instrument with pen and ink which he carried with him.    After the execution of the note by the appellant, and without his knowledge or consent, Fitzmaurice inserted the words "The Farmers Bank" before the word "Covington," in such a manner as to afford no indication of an alteration of the note after its execution, and in that condition endorsed it before maturity to the appellees who paid value therefor, without notice or intimation of the alteration.

In support of the decision of the circuit court the following cases are cited : *Marshall* v. *Drescher,* 68 Ind. 359 ; *Gothrupt* v. *Williamson,* 61 Ind. 599 ; *Cornell* v. *Nebeker,* 58 Ind. 425 ; *Spitler* v. *James,* 32 Ind. 202. In these cases the following are referred to : *Hereth* v. *The Merchants' Nat'l Bank,* 34 Ind. 380 ; *Nebeker* v. *Cutsinger,* 48 Ind. 436 ; *Riley* v. *Schawacker,* 50 Ind. 592 ; *Steele* v. *Moore,* 54 Ind. 52 ; *Woollen* v. *Ulrich,* 64 Ind. 120 ; *Noll* v. *Smith,* 64 Ind. 511 ; *Gerrard* v. *Hadden,* 67 Pa. St. 8 ; *Zimmerman* v. *Rote,* 75 Pa. St. 188 ; *Chapman* v. *Rose,* 56 N. Y. 137 ; *Redich* v. *Doll,* 54 N. Y. 234.

In *Gillaspie* v. *Kelley,* 41 Ind. 158, the note read when executed, "payable at —— Bank, at Frankfort." The alteration consisted in filling the blank so as to designate a particular bank. It was held that the holder of the note had implied authority to fill the blank in that way. The following extracts from the opinion in that case are pertinent to the present discussion :

" The insertion of the name of the bank in Frankfort, where the same was payable, was a material alteration, and rendered the note void unless the payee was authorized to fill the blank by inserting the name of the bank. *Woodworth* v. *Bank of America,* 19 Johns. 391 ; *Clute* v. *Small,* 17 Wend. 238 ; *Nazro* v. *Fuller,* 24 Wend. 374.

" We proceed to inquire whether the payee of a negotiable promissory note is authorized to insert the name of the bank where the same has been left blank.

" The maker of a promissory note stands upon the footing of an acceptor of a bill of exchange. *Nazro* v. *Fuller,* 24 Wend. 374 ; Chitty Bills, 100–103 ; Byles Bills, 173–177.

" In our opinion, the rule is well settled, that if a person indorses or signs in blank paper or a note and intrusts it to another that he may raise money upon it, he authorizes that other person to fill all blanks which are necessary and proper to make the instrument a perfect and complete bill of exchange or promissory note, as the case may be. *Holland* v. *Hatch,*

11 Ind. 497; Spitler v. James, 32 Ind. 202, and the authori-
ties there cited. It is quite obvious to us, not only from the
face of the note, but from the evidence of the appellee, that
the maker of the note in question intended to make the same
negotiable and governed by the law merchant. If the parties
had intended to make an ordinary promissory note, and it
had been complete as such when it was delivered to the payee,
such payee would not have been authorized to insert words
rendering it negotiable; and if there had been no blank in
the note, and such words had been interlined, such interlinea-
tion would have put a purchaser upon inquiry. The note, when
delivered, was not perfect and complete as a negotiable in-
strument governed by the law merchant. The payee had the
right to make it perfect and complete by inserting the name
of the bank where it was to be payable."

The case in the record before us is in some respects essentially
different. The note as executed was a perfect non-negotiable
note. No words were wanting in order to give full force and
effect to the words present. It was just as the maker intended
it should be. It was prepared upon a printed form, and the
words inserted did not fill the entire blank space, but left it
possible to make an insertion of other words, which were
wrongfully inserted, and when inserted made the note appear
to be negotiable by the law merchant. If the word "Coving-
ton" had been written close to the word "at," the words "at the
Farmers' Bank" might have been inserted after the words
"Covington, Ind.," and so the same alteration in the character
of the instrument would have been equally well accomplished.

The exact question presented in this record is, whether the
maker of a non-negotiable promissory note, perfect in its
terms, by leaving a blank space in the body of the note wherein
words of negotiability may be so inserted as not to furnish an
indication of the alteration having been made irregularly,
gives an implied authority for the making of the alteration,
which, as against a bona fide purchaser, he may not deny.

The case of Marshall v. Drescher, 68 Ind. 359, was essen-

tially the same in its facts, and was decided upon the same ground as *Gillaspie* v. *Kelley, supra*. The cases of *Cornell* v. *Nebeker*, 58 Ind. 425, *Gothrupt* v. *Williamson*, 61 Ind. 599, and other decisions of this court referred to in these cases, all arose upon facts quite distinguishable from those now before us.

In the case of *Holmes* v. *Trumper*, 22 Mich. 427, S. C. 7 Am. R. 661, upon a state of facts not essentially unlike those shown in *Gillaspie* v. *Kelley* and *Marshall* v. *Drescher, supra*, is a vigorous discussion of the principle involved.

We give the following extracts from the opinion in that case, which received the unanimous concurrence of the judges:

" We think the courts have gone quite far enough in sustaining instruments executed in blank, and the implied authority to fill them up, and we are not disposed to take a step in advance in that direction. * * *

" The general principle that ' where one of two innocent parties must suffer,' etc., upon which the plaintiff in error relies, as stated by us in *Burson* v. *Huntington*, 21 Mich. 415, is one which, in its application, is mainly confined to cases where the third person, whose act or default has occasioned the loss, has been in some sense or to some extent, the agent of the party who is made to sustain the loss, or when the latter, by his acts or negligence, has authorized the other party to consider him as such; and in all the cases (unless this is an exception) where, upon the general principle relied upon, a party has been held liable upon a written contract on the ground of negligence alone, without reference to such agency, he has only been held liable upon it in the shape in which he allowed it to go from his hands, and not as criminally altered by another. * * As between the maker of commercial paper, and an innocent party acting upon the faith of the paper, which the maker has voluntarily and intentionally executed and even negligently allowed to go out of his hands and to get into circulation, the general principle we are discussing would preclude such maker from showing that the paper was not intended to have the effect which its appearance indicated,

though, as between the original parties, many things might be shown to defeat it.   It is substantially a representation upon which he has authorized innocent parties to act; and when they have thus acted he must be held by the contract indicated by the representation thus made.

" But this reasoning extends only to the paper as made by him, or as he has thereby authorized some other person to change its terms; and the note in this case being a complete legal instrument when issued, to hold him bound by the contract, as altered by the forgery, involves the idea that the person committing the forgery was his agent in committing it (a ludicrous absurdity), or at least that he had authorized innocent third parties so to treat him.   *   *   The argument amounts simply to this:   That by the maker's awkwardness or negligence his note was issued by him in a shape which rendered it somewhat easier for another person to commit a crime than if he had taken the precaution to erase the word 'at,' and to draw a line through the blank which followed it; and that a forgery committed by filling this blank would be less likely to excite suspicion than if committed in some other way.

" But how such a crime, whether committed in this or in any other way, could create a contract on the part of the maker, we confess ourselves unable to comprehend; nor are we satisfied that a forgery committed in this way would be any less liable to detection than if committed in many other ways. The negligence, if such it can be called, is of the same kind as might be claimed if any man, in signing a contract, were to place his name far enough below the instrument to permit another line to be written above his name in apparent harmony with the rest of the instrument; or, as if the instrument were written with ink, the material of which would admit of easy and complete obliteration or fading out by some chemical application which would not affect the face of the paper, or by failing to fill any blank at the end of any line which might happen to end far enough from the side of the page to

admit the insertion of a word. The law has no scale by which to measure the various degrees of facility with which different modes of forgery may be committed, or their liability to suspicion or detection; and we see no clear and intelligible distinction by which we could hold the maker in this case bound by this forgery, which would not hold all persons liable for the alteration and forgery of any paper signed by them. Whenever a party in good faith signs a complete promissory note, however awkwardly drawn, he should, we think, be equally protected from its alteration by forgery in whatever mode it may be accomplished; and unless, perhaps, where it has been committed by some one in whom he has authorized others to place confidence as acting for him, he has quite as good a right to rest upon the presumption that it will not be criminally altered, as any person has to take the paper on the presumption that it has not been; and the parties taking such paper must be considered as taking it upon their own risk, so far as the question of forgery is concerned, and as trusting to the character and credit of those from whom they receive it, and of the intermediate holders.

" If promissory notes were only given by first-class business men who are skilful in drawing them up in the best possible manner to prevent forgery, it might be well to adopt the high standard of accuracy and perfection which the argument in behalf of the plaintiff in error would require. But for the great mass of the people who are not thus skilful, nor in the habit of frequently drawing or executing such paper, such a standard would be altogether too high, and would place the great majority of men, of even fair education and competency for business, at the mercy of knaves, and tend to encourage forgery by the protection it would give to forged paper."

This reasoning is in entire accord with the propositions quoted from the opinion in *Gillaspie* v. *Kelley, supra.* To the same effect, see *Worrell* v. *Gheen,* 39 Pa. St. 388; *Goodman* v. *Eastman,* 4 N. H. 455; *Bruce* v. *Westcott,* 3 Barb. 374;

*Washington Savings Bank* v. *Ecky*, 51 Mo. 272; *Ivory* v. *Michael*, 33 Mo. 398; *Presbury* v. *Michael*, 33 Mo. 542; *Wade* v. *Withington*, 1 Allen, 561; *Fay* v. *Smith*, 1 Allen, 477; *Draper* v. *Wood*, 112 Mass. 315; *Wood* v. *Steele*, 6 Wal. 80; *Lisle* v. *Rogers*, 18 B. Mon. 528; *McGrath* v. *Clark*, 56 N. Y. 34; *Hert* v. *Oehler*, 80 Ind. 83.   See also *Cline* v. *Guthrie*, 42 Ind. 227.

In *McGrath* v. *Clark*, *supra*, which is fully in point, and, in its facts, is even a stronger case than the one before us, it is said by CHURCH, C. J., who delivered the opinion of the court: "The rule that 'whenever one of two innocent parties must suffer,' * * is not applicable for the reason that the endorser did not, in any legal sense, *enable* the maker to make the alteration;" and in *Wood* v. *Steele*, *supra*, it is said, to the same point: "The defendant could no more have prevented the alteration than he could have prevented a complete fabrication; and he had as little reason to anticipate one as the other."

There are cases in actual, and in seeming, conflict with the foregoing; but they are, in most instances, cases where the notes, as executed, were imperfect, the unfilled blanks being in such connection with the words used as to require the insertion of other words in order to complete the instrument as executed; or they turn upon a misapplication of the maxim that "If one of two innocent persons must suffer," etc.; as if any man could, or was bound to endeavor to, protect the world against the commission of forgeries upon his obligations. If he owes the public any duty whatever, in this respect, the measure of that duty must be the utmost care which, in each case, can reasonably be employed; and the inquiry in each case of unauthorized alteration will be, not whether the party sought to be charged made the obligation, but whether he might, by greater care, have so constructed the instrument which he did execute, as that an alteration of it would have been impossible or more difficult.   Such a doctrine, instead of giving stability and credit to commercial paper, would lead

to uncertainties quite inconsistent with the character which such paper ought, and is generally supposed, to bear. Besides, if the maxim referred to can apply at all, it applies as well to non-commercial as to commercial paper, and, to be consistent, we should be driven to hold that the maker of a note not payable in bank is estopped as against an innocent purchaser, from pleading an alteration made by filling blank spaces carelessly left at the time the paper was issued.

The simple and fair rule for all is, that the purchaser of paper, whether negotiable by the law merchant or not, is put upon inquiry as to the genuineness of the paper in all its material parts, by the mere fact that it is offered for sale; and if he sees fit to omit making inquiry of the maker, he buys at his own risk and upon the faith of his immediate endorser, or other parties, if any, against whom he may have recourse.

The judgment is reversed, with costs, and with instructions to grant the appellant a new trial.