De Pauw *et al. v.* The Bank of Salem.

No. 14,487.

## De Pauw et al. v. The Bank of Salem.

PROMISSORY NOTE.—*Payable at Bank.—Inland Bill of Exchange.*—A note payable to order at a bank in this State is negotiable as an inland bill of exchange. The fact that the bank at which the note is made payable and negotiable is also the payee does not destroy its commercial quality.

SAME.—*Endorser.—Liability of as Endorser or Surety.—Notice of Non-Payment.* —One who endorses such note before delivery, with the intention of assuming the liability of an endorser, in order to give the principal in the note credit with the bank, is liable as an endorser, and not as surety, and the failure of the bank to give notice of the dishonor of the note results in his discharge; and it is immaterial that the bank and the maker of the note intended that the endorser should be bound as surety, unless there was an agreement with the endorser.

SAME.—*Blanks.—Power to Fill.—Alteration.*—Where one signs a note in blank, or leaves blanks in it necessary to be filled in order to make it a complete contract, and delivers it in this condition, he thereby clothes the holder with implied authority to fill the blanks. But where a contract complete in all its terms is intrusted to the maker by the indorser to be delivered, he has no implied authority to make an agreement with the payee that the endorser shall be liable as surety.

From the Washington Circuit Court.

*A. Dowling,* for appellants.

*A. B. Collins, S. B. Voyles* and *H. Morris,* for appellee.

MITCHELL, J.—The decision in this case depends upon the conclusions of law to be drawn from the following facts: In April, 1884, Andrew J. McIntosh executed a promissory note for $1,500 to the Bank of Salem, Indiana, the bank being named therein as payee. The note was negotiated and payable at the Bank of Salem, Indiana, and was given as a second renewal of a note similarly signed, which had been executed in consideration of money loaned to Andrew J. McIntosh. The name of Newland T. De Pauw was endorsed on the back of the note before it was delivered by McIntosh, the latter having signed on the face as maker. The note was delivered to the bank in the absence of the endorser.

Without finding that there was any agreement, either ex-

press or implied, concerning the character of the obligation to be assumed by the endorser, the court found that the officers of the bank and McIntosh intended, at the time the note was delivered and accepted, that De Pauw should be liable as surety, but that the latter intended to assume the character and liability of an endorser, in order to give the former credit with the bank, but that he did not inform the officers of the bank of his intention in that regard.

The note was never protested for non-payment, nor was the endorser ever notified of the dishonor of the paper.

Both maker and endorser knew that it was a requirement of the bank that all notes should have two names before they could be accepted for loans.

The notes for which the one in suit had been given in renewal had run until they were from three months to a year or more past due before renewal notes were given. . McIntosh is insolvent.

It was the opinion of the learned circuit court that upon the foregoing facts the appellant was liable as a surety or joint maker.

If the defendant, by signing his name on the back of the note before its inception, did so under such circumstances as to impose upon him the liability of a maker, then he was not entitled to notice, as the rule is that a surety or joint promisor is bound to take notice of the default of his principal; while, on the other hand, if his liability was that of an endorser, the failure of the bank to give notice of the dishonor of the paper resulted in his discharge.

It was settled as the law of this State, in *Wells* v. *Jackson*, 6 Blackf. 40, that where one, not the payee of a note, not negotiable as an inland bill of exchange, wrote his name upon the back of the paper, prior to or at the time of its inception, without any agreement expressing the real nature of the obligation intended to be assumed, he thereby conferred authority upon the payee to treat him as a surety or joint promisor, while a similar act in respect to a note ne-

gotiable as an inland bill of exchange subjected the person so signing presumably to the liability, as well as to the privileges and immunities, of an endorser. Whatever apparent fluctuations there may appear to be in the decisions, the rule as enunciated in *Wells* v. *Jackson, supra,* must be regarded as the settled law of this State. For the purpose of carrying into effect the intention of the parties to the contract, parol evidence of the facts and circumstances attending the transaction is admissible, and the *prima facie* liability of one who thus signs his name may be shown to be, in fact, that of a maker instead of an endorser, but the rule is, in the absence of evidence showing an intention on the part of one who signs in blank to be bound as maker, that he will be held liable only as endorser. *Pool* v. *Anderson,* 116 Ind. 88, and cases cited; *Moorman* v. *Wood,* 117 Ind. 144, and cases cited; *Good* v. *Martin,* 95 U. S. 90.

The significance of the rule lies wholly in determining in each case the necessity of giving or not giving notice to the person whose name has been thus signed, of the non-payment of the note. If his liability is in fact that of a maker no notice is necessary. If liable as an endorser, failure to give notice of non-payment is equivalent to a discharge. *Bronson* v. *Alexander,* 48 Ind. 244.

The note with which we are here concerned is payable to order at a bank in this State, and is, therefore, negotiable as an inland bill of exchange within the express terms of the statute. Section 5506, R. S. 1881. We are not aware of any authority which holds, nor have we discovered any reason for holding, that because the bank at which the note was made payable and negotiable is also the payee, the commercial quality which the statute gives to paper payable at a bank in this State is thereby destroyed. The note having, therefore, the character of mercantile paper, and having been endorsed before it was delivered in order to give the maker credit with the payee, the liability of the endorser, while the paper remains in the hands of the payee, is *prima*

*facie* that of one who agrees to pay the debt in case of the default of his principal upon being duly notified.

It is competent in such a case, according to some of the cases, to control the *prima facie* liability of the endorser by parol evidence, by proving a mutual agreement on the part of the payee and the endorser that the latter should assume the liability of a surety or joint maker. " Whether the contract was one of endorsement or suretyship depended, not upon the intent of one of the parties, but on the mutual understanding and intent of both." *Kealing* v. *Vansickle,* 74 Ind. 529 (533).

It was, therefore, wholly immaterial what the bank and the maker of the note may have intended, since it appears that there was no agreement one way or the other with the endorser, whose intention was to assume precisely the liability which his name on the back of the note implied.

The facts found in the present case show that the bank and the principal in the note intended that the appellant should be bound as surety, but they also show quite as distinctly that the appellant signed the note, intending at the time to assume the liability of an endorser, in order to give his principal credit with the bank. This, of course, gave the bank the security of both names, according to the requirement of its rules, provided, however, it took the necessary steps to fix the liability of the endorser by giving notice, according to the rules of commercial law.

If the endorser, for his own protection, elected to assume such a relation to the paper, as to require the bank to give notice of non-payment when the note matured, why should the bank complain if, because of its neglect, the appellant now insists upon his contract as he made it, and as it was accepted by the bank.

It results that the court erred in its conclusions of law upon the facts found.

The judgment is reversed, with costs, with directions to

the court below to re-state its conclusions of law, and to render judgment in consonance with the foregoing opinion.

Filed Nov. 11, 1890.

## ON PETITION FOR A REHEARING.

McBRIDE, J.—The appellee in this case earnestly insists that a rehearing should be granted. The ground upon which this is asked can be best stated by quoting from the petition. They say: " The lamented judge, who was the author of the opinion, seems to have overlooked the vital point insisted upon by appellee. * * McIntosh held a dual position; he represented himself, of course, and at the same time he represented De Pauw. * * When De Pauw signed the note at New Albany and sent it to McIntosh at Salem, and failed to send special instructions, and failed to limit the authority of McIntosh, the law is that McIntosh acted as a sort of agent for De Pauw, and whatever McIntosh did with the note would bind De Pauw. * * If De Pauw intended when he put his name to the note to only stand as endorser, the law should hold him to such action as will protect the innocent and unsuspecting."

The rule of law thus invoked has no application to the facts of this case. It is undoubtedly the law that when one signs a note in blank, or leaves blanks in it necessary to be filled in order to make it a complete contract, and delivers it in this condition, he thereby clothes the holder with implied authority to fill the blanks. And in such case, even if the blanks are filled in violation of the express understanding of the parties, he will be liable to an innocent holder, the note being negotiable. *Armstrong* v. *Harshman*, 61 Ind. 52; *Cronkhite* v. *Nebeker*, 81 Ind. 319; Randolph Com. Paper, section 181, and cases cited. The authority to fill the blank in such case is derived from the implied agency created by the maker's act in putting the paper into circulation. Randolph Com. Paper, *supra.* There is, however, in such cases no implied authority to change the instrument

in any respect in which it is complete and perfect when it is thus signed and issued.   If the instrument lacks nothing to make it a complete and perfect contract, the mere fact that blanks are left in which other stipulations may be written confers no implied authority upon the person to whom it is intrusted to fill such blanks.   *Coburn* v. *Webb*, 56 Ind. 96 ; *Gothrupt* v. *Williamson*, 61 Ind. 599 ; *Cronkhite* v. *Nebeker*, *supra*, and numerous cases there cited.

The meaning of the contract created by a blank endorsement of commercial paper is fixed by mercantile law, and the degree of liability assumed by the endorser is as fixed and certain as if its terms were written in full.   Judge ELLIOTT, in the case of *Campbell* v. *Robbins*, 29 Ind. 271, says : " ' This liability is not expressed, in terms, in a full endorsement any more than it is in a blank one ; it is an implication of law arising from each,' and can not, in either case, be varied or qualified by a parol agreement simultaneous with the endorsement."

It is true, as stated in the original opinion, the courts have recognized an apparent exception to this rule, by holding that it may be shown by parol that the apparent endorser assumed the liabilities of a surety, but as there stated, this can only be shown by showing a mutual agreement to that effect between the payee and the endorser.   The maker of the note, to whom it is intrusted for delivery, has no implied authority to make such an agreement for him.

De Pauw, in writing his name across the back of the note and saying nothing as to the character in which he was signing it, assumed the character of endorser, and no other.   In that character it was not necessary that he should say anything.   It was only necessary for him to speak if he intended the primary significance of that act to be varied.   Therefore, in intrusting the note to McIntosh for delivery, he placed in his hands a contract which was fixed, specific and complete in all its terms.   There was, therefore, no room for any inference of any implied authority in McIntosh to add

any thing to it. The implied authority possessed in such cases by the party intrusted with the contract is to complete it. Whatever is necessary to make it a complete contract according to the intention of the parties he may do, but beyond that he can not go.

In this case the only thing needed to complete the contract was delivery, and this was the extent of the authority with which De Pauw had clothed him. Of this the bank was bound to take notice.

It was bound to know that the contract thus presented to them was upon its face a contract of endorsement, and nothing more; and it was also bound to know that if it wished to change the character of that contract it must treat with the party who had made it.

The court did not overlook the point indicated, and is still of the opinion that the case was correctly decided.

Petition for rehearing overruled, at appellee's costs.

Filed Jan. 17, 1891.