No. 897.

## HODGE ET AL. *v.* THE FARMERS' BANK OF FRANKFORT, INDIANA.

VERDICT.—*Instruction to Jury to Return Verdict in Favor of a Party.— When Erroneous.*—An instruction to return a verdict in favor of one of the parties to an action can only be justified when there is no evidence which would sustain a different verdict.

PROMISSORY NOTE.—*Material Alterations by Payee.—Release of Surety.* —A surety on a promissory note is released by a material alteration of the body of a note, made by the payee, with knowledge of the suretyship, without the surety's consent, and after it has been signed by the surety and is apparently complete.

SAME.—*Alteration of Note. —Limitation of Rule.*—The power to fill blanks in a promissory note which has previously been signed does not include the power to make alterations or additions to a completed note.

SAME.—*Material Alteration.—Release of Surety.*—Where a blank note was presented by A., the maker, to B. and C. for their signatures as sureties thereon for the purpose of enabling A. to obtain a loan of a certain sum of money from E., who signed it as sureties, and A. presented the same blank note to D. for the same purpose, who signed it, and filled in the blanks, making E. the payee, and making the note complete; and upon presentment of the note to E. signed by A., and B., C. and D. as sureties, E. objected to⸰the note · being made payable to him, and upon the suggestion of A. added the word "cashier" to his name in the note, without the knowledge and consent of the sureties, he being at the time cashier of the bank which subsequently sued on the note in the bank name, the addition of the word "cashier" to the payee's name in the note was a material alteration, making the bank the payee instead of E., and worked a release of the sureties, B., C. and D.

SAME.—*Alteration.—Descriptive Appellation.—Exception to Rule.*—The law as to the addition of the phrase "cashier" to the name of the payee of the note, as above mentioned, is an exception to the general rule that the addition of a descriptive appellation to a name does not·add to nor detract from the name, nor change the legal effect.

SAME.—*Extension of Time of Payment.—Release of Surety.—Defenses Waived.*—A contract, upon a valuable consideration, entered into between the payee and principal debtor of a promissory note, whereby the time of payment is definitely extended, releases the

Hodge *et al. v.* The Farmers' Bank of Frankfort, Indiana.

sureties thereon, unless they consent thereto or the note contains a provision waiving all defenses on such ground.

From the Boone Circuit Court.

*A. H. Boulden, M. Bristow, C. M. Zion, J. Q. Bayless*, and *C. G. Guenther*, for appellants.

*C. S. Wesner*, for appellee.

GAVIN, J.—The appellee sued the appellants, Hodge and Gard, together with Lewis C. Riley and James H. and H. Droneberger, upon a promissory note.

It is alleged in the complaint that the defendants "executed to plaintiff their promissory note, payable to David A. Coulter, cashier of the Farmers' Bank, for two thousand dollars," etc.

Gard, Hodge, and Riley filed sworn answers of *non est factum*.

Gard also answered affirmatively that he was surety, as appellee knew, and that the time of payment was extended three months upon payment of interest in advance, without his knowledge or consent. To this answer a demurrer was sustained.

Upon the trial, the court instructed the jury to return a verdict against Hodge and Gard, who now appeal.

Upon the correctness of this instruction depend the rights of the parties.

An instruction to return a verdict in favor of one of the parties can only be justified when there is no evidence which would sustain a different verdict. *Weis* v. *City of Madison*, 75 Ind. 241; *Purcell* v. *English*, 86 Ind. 34; *Overton* v. *Indiana, etc., R. W. Co.*, 1 Ind. App. 436.

The facts, as disclosed by the evidence, are about as follows: John Hodge, at the request of James H. Droneberger, signed a blank note, upon appellee's ordinary printed form, payable at its bank, and entrusted it to Droneberger. The name of Lewis C. Riley was next

added to the note. It was afterwards presented by Droneberger to Gard for his signature. Gard signed it, but at the same time filled in the date, amount and name of payee, making the note apparently complete in all respects except that, by oversight, he omitted the word "days" after "sixty." As he filled out the note, it was made payable to "David Coulter," and a line was drawn through the blank space after "Coulter," leaving then no blank space in that part of the note left for the payee's name. Droneberger then took the note and presented it to David Coulter at the appellee's bank, of which he was the cashier. He looked at it and said, "This is not right; it is made payable to David Coulter. It should be made payable to the bank." Whereupon Droneberger told him to add "cashier" to his name, which he did. Droneberger then signed his firm's name to the note, and Coulter, for the bank, discounted the note and placed the proceeds to the firm's credit in bank.

The alteration of the note was made without the knowledge or authority of any of the makers, except Droneberger. The Dronebergers were principals on the note, as the appellee knew. There were personal dealings between Coulter and the Dronebergers, aggregating several thousand dollars.

In addition to these facts, which are undisputed, Hodge testified that the note was to be for only $1,000, and that this amount was written in figures in the upper left-hand corner, and that Droneberger told him the money was to be obtained from David Coulter.

By the verdict of the jury, Riley was held not liable.

Hodge and Gard are in somewhat different positions with respect to the alteration, in that when Hodge signed the note the payee's name was left blank, while Gard filled it in when he signed. For the purposes of this investigation, however, they are upon an equality. The

blank for the payee's name had been filled in by Gard in accordance with the understanding between Hodge and Droneberger, as testified to by Hodge, the note being in this form, apparently perfect and complete, presented to Coulter by the principal, Coulter was thus advised as to the purpose of Hodge.

Droneberger had no actual authority from Hodge to make or authorize the alteration. Neither was he, at this time, clothed with any apparent authority to so do, because there was no blank space wherein the matter was appropriate to make the instrument complete.

It is true that if a surety entrusts to his principal a negotiable note signed by himself but left blank in part and incomplete, the principal may fill such blanks with appropriate matter, and the surety will be bound thereby in the hands of an innocent holder, even though the principal, in filling the blanks, exceeds his authority. *De Pauw* v. *Bank of Salem*, 126 Ind. 553; *Geddes* v. *Blackmore*, 132 Ind. 551, 32 N. E. Rep. 567.

Here, however, there was no blank to be filled when the alteration was made, and the power to fill blanks does not include alterations or additions to a completed instrument. *Cronkhite* v. *Nebeker*, 81 Ind. 319.

Notice to the payee of the limitations of the principal's authority prevents him from taking advantage of this rule. *Wagner* v. *Diedrich*, 50 Mo. 484.

The presence of the name of the payee in the note, when presented to him, was notice to him that it was the design of those who had signed it to make the note payable to the payee named therein. The following cases are authorities upon the principle here involved. *Angle* v. *Northwestern, etc., Co.*, 92 U. S. 330; *Hagler* v. *State* (Neb.), 47 N. W. Rep. 692; *Dair* v. *United States*, 16

Wall. 1; *Pawling* v. *United States*, 4 Cranch, 219; *State* v. *Craig*, 58 Iowa, 238, 12 N. W. Rep. 301.

A surety is released by a material alteration of the body of a note made by the payee, with knowledge of the suretyship, without the surety's consent, and after it has been signed by the surety and is apparently complete. *Coburn* v. *Webb*, 56 Ind. 96; *Johnston, Receiver*, v. *May*,, 76 Ind. 293; *Schnewind* v. *Hacket, Admr.*, 54 Ind. 248.

In *Eckert* v. *Louis*, 84 Ind. 99, this language is quoted from Daniel on Neg. Inst., section 1373: "Any change in the terms of a written contract which varies its original legal effect and operation, whether in respect to the obligation it imports or to its force as matter of evidence, when made by any party to the contract, is an alteration thereof, unless all the other parties to the contract gave their express or implied consent to such change. And the effect of such alteration is to nullify and destroy the altered instrument as a legal obligation."

The real controversy in this case arises upon the question as to the materiality of the alteration. The appellee, if we understand his position aright, claims that the addition of the word "cashier" did not in any way affect the note, because it was a mere descriptive appellation, and, so far as its legal force was concerned, neither added to nor detracted from the name already there. In support of their position, counsel cite and rely upon several Indiana cases wherein it is held that contracts signed by individuals with the word "agent" or "trustees" of certain church or order are to be considered as individual contracts, and not the contracts of the body of which the signers are such agents or officers. *Hayes* v. *Matthews*, 63 Ind. 412; *Hays* v. *Crutcher*, 54 Ind. 260; *Williams* v. *Second Nat'l Bank*, 83 Ind. 237; *McClellan* v. *Robe*, 93 Ind. 298; *Second Baptist Church* v. *Furber*, 109 Ind. 492.

While these cases so hold, it is fully recognized by our

Supreme Court that as to banks the act of the cashier is the act of the bank, and that a bank may sue upon a note payable to its cashier, as such, just as though it were payable to it by its corporate name.

This principle was enunciated in the early case of *Bank of the State* v. *Wheeler*, 21 Ind. 90, where a bill was indorsed to "H. Early, cashier" and by "H. Early, cashier." In a suit by the indorsee holding under this indorsement, it was held that the bank of which he was cashier was liable upon it.

In *Dutch* v. *Boyd*, 81 Ind. 146, the court decided that "Paper made payable or indorsed to the cashier of a bank is in legal effect payable to the bank itself."

In *Nave* v. *First Nat'l Bank*, 87 Ind. 204, it is held that a note made payable to A. B., "cashier of First Nat'l Bank," may be sued on by the bank as payee, without any indorsement, upon an allegation that A. B. was cashier of plaintiff's bank.

"It is well settled that a note made payable to the cashier of a bank is to be deemed payable to the bank, and that the bank may sue thereon as payee." *Nave* v. *Hadley*, 74 Ind. 155; *Erwin, etc., Co.* v. *Farmers' Nat'l Bank*, 130 Ind. 367.

The principle upon which these cases are based is supported by numerous authorities. Story on Prom. Notes, 127; *Bank of New York* v. *Bank of Ohio*, 29 N. Y. 619; *First Nat'l Bank* v. *Hall*, 44 N. Y. 395; *Bank of Genessee* v. *Patchin Bank*, 19 N. Y. 312; *Folger* v. *Chase*, 18 Pick. 63; *Baldwin* v. *Bank*, 1 Wall. 234; *Houghton* v. *First Nat'l Bank*, 26 Wis. 663; *Garton* v. *Union City Nat'l Bank*, 34 Mich. 279; Morse on Banking, sections 158 (h), 170; 2 Am. and Eng. Ency. of Law, 337; *Pratt* v. *Topeka Bank*, 12 Kan. 570; *Horn* v. *Newton City Bank*, 32 Kan. 518; *Stamford Bank* v. *Ferris*, 17 Conn. 259.

That the law thus established as to banks and bank

cashièrs is an exception to the general rule as laid down in cases cited by appellee and referred to above, may be conceded, but that the exception, created doubtless from a deference to commercial necessities and usages, is thoroughly established and generally recognized, is, we think, unquestionable.

It is said, in Daniel on Neg. Inst., section 417: "An exception to the general rules of interpretation, which have been stated, has been made in respect to the cashiers of banks. They are the chief financial agents of their institutions, and when a bill or note is made payable to an individual with the suffix of 'cas.,' 'cash.,' or 'cashier,' to his name, it has been generally decided to be really payable to the corporation of which such party is the cashier, and so to import upon its face, the officer's name being used as that of his principal, which may not be disclosed on the face of the paper."

"When a bank sues on a note, an allegation that 'A. B.' was its cashier, and that the note was indorsed to A. B., cashier, is sufficient to show the bank's title." Bolles on Bank Officers, section 523.

"In general, it may be said that the title to a note, payable to a cashier, is *prima facie* in the bank of which he is the cashier, and the institution can sue thereon in its own name." *Idem*, section 524.

The appellee has acted upon this doctrine by bringing this suit in favor of the bank, counting upon the note as executed directly to it without even seeking the aid of any extraneous facts.

It is well established that a payee is essential to a promissory note, and the change of the payee or of an indorsee is a material alteration. *Grimes* v. *Piersol*, 25 Ind. 246; *Stoddard* v. *Penniman*, 108 Mass. 366; *Bell* v. *Mahin*, 69 Iowa, 408; *Robinson* v. *Berryman*, 22 Mo.

App. 509; 1 Am. and Eng. Ency. of Law, 506; 2 Daniel on Neg. Inst., section 1387.

The note in suit, when signed, was payable to Coulter. It was by the holder changed so as to be payable to another, without the consent of appellants. The identity of the note was thereby destroyed, and the appellants were no longer bound by it. This we must hold to be the law under the facts which the evidence proved or tended to prove in this case. *Weir, etc., Co.* v. *Walmsley*, 110 Ind. 242; *Franklin Life Ins. Co.* v. *Courtney*, 60 Ind. 134.

It therefore follows that the court erred in directing a verdict for the appellee.

Some other questions are presented with reference to the action of the court upon the trial, but we do not deem it necessary to take them up.

The answer setting up a single extension of time of payment, for a valuable consideration, is bad by reason of the provision in the note whereby it is waived.

The note contains this clause: "The drawers and indorsers severally waive presentment for payment, protest and notice of protest and nonpayment of this note, and all defenses on the ground of any extension of the time of its payment that may be given by the holder or holders to them or either of them."

It is established law that a contract made with the principal debtor upon a valuable consideration and without the consent of the surety, extending the time of payment for a definite period, releases the latter from liability. *Gipson* v. *Ogden*, 100 Ind. 20; *Jarvis* v. *Hyatt, Exec.*, 43 Ind. 163.

The terms of this note, however, must necessarily be construed to be a consent to at least one extension of time. That such a consent embodied in the note is binding and effectual upon the makers is recognized by the case of *Glidden* v. *Henry*, 104 Ind. 278, wherein it is

held that a provision for general extensions destroys the character of negotiability by the law merchant, which would otherwise attach to the note. The American Law Review (N. S.), volume 24, p. 716, contains an exhaustive review of this case by Mr. W. W. Thornton.

That such a provision is binding upon the surety for at least one extension is supported by Brandt on Suretyship, section 346; *Rochester Savings Bank* v. *Chick*, 64 N. H. 410; *Miller* v. *Spain*, 41 Ohio St. 376.

Judgment reversed, with instructions to sustain the motion for a new trial.

Filed May 23, 1893.