LIGHT ET AL. *v.* KILLINGER.

[No. 2,043.    Filed September 30, 1896.]

BILLS AND NOTES.—*Alteration of Instrument.*—The validity of a note having all the essentials of negotiability except the name of a bank at which it is payable is not destroyed by the insertion therein, by the legal holder, of the name of a bank in the blank space after the words "negotiable and payable at," where the insertion was merely by way of a memorandum, and was made in lead pencil, and in a different handwriting from that in the body of the note, and no attempt was made or intended to be made to transfer it to an innocent purchaser, and the action is on the note in its original condition.

From the Marion Circuit Court. *Affirmed.*

*William Bosson* and *J. W. Claypool,* for appellants.

*Jameson & Joss,* for appellee.

REINHARD, J.—Killinger sued appellants, Light and Dixon, upon a promissory note, alleged to have been executed by Light to Dixon, and by Dixon endorsed to Killinger. Dixon and Light each filed a separate answer in two paragraphs, the first of which was the general denial, and the second set up a material alteration of the note. The appellee replied by general denial. The cause was submitted for trial

to the court. When the evidence was closed the appellants filed a demurrer thereto, which was overruled and an exception reserved to the ruling. The sole assignment of error presents the question of the correctness of the ruling of the court in overruling the demurrer to the evidence.

The evidence shows that Killinger was a manufacturer of refrigerators, and sold a quantity of such furniture to Dixon, who took in part payment the note executed by Light to Dixon, reading as follows:
"Indianapolis, Ind., July 31, 1891.

"Sixty ———— after date I promise to pay to W. H. Dixon one hundred dollars, negotiable and payable at ———————, with interest at the rate of 6 per cent. per annum from date and 5 per cent. attorney's fees, value received, without any relief whatever from valuation or appraisement laws. The drawers and endorsers severally waive presentment for payment, protest or notice of protest, and nonpayment of this note."                    (Signed) "R. C. LIGHT."

Dixon endorsed the note to Killinger by signing his name across the back. Two or three days before the note matured, Killinger endorsed the same to Balke & Krauss, a business firm in Indianapolis, with whom Killinger had dealings and to whom he was indebted on an account current. It was the practice of these parties that Killinger would turn over to Balke & Krauss notes received by him from his customers, and as payments on such notes were made, they were placed to Killinger's credit. If any note was not paid it was returned to Killinger.

When Killinger endorsed and delivered the note in suit to Balke & Krauss, Mr. Krauss, a member of said firm, asked Killinger in what bank Dixon transacted his business. Killinger answered that he did not know, but would ascertain the fact from Mr. Dixon.

He saw Dixon and learned from him that it was the Bank of Commerce. He so reported to Mr. Krauss, and the latter thereupon, with a lead pencil, inserted the words "Bank of Commerce" in the blank space left in the body of the note following the words, "Negotiable and payable at." This was done in the presence of Killinger, but not by his direction.

When the note became due Balke & Krauss presented it for payment at the Bank of Commerce, but it was returned to them unpaid, and they returned it to Killinger, who, after repeatedly asking Dixon to pay it, and failing in the collection thereof, at the expiration of more than two years, brought this action upon it.

The suit is brought upon the note as it was before the insertion "Bank of Commerce" was made, said words not being contained in the copy declared upon.

It is the contention of the appellants' counsel that the facts above stated constitute a material alteration of the note made by and while in the hands of a legal holder or owner thereof, and that such alteration destroys the validity of the note and defeats the appellee's right to recover thereon, either in its original or altered form. We have carefully considered the question, and our conclusion is that the court committed no error in overruling the demurrer to the evidence. There was evidence from which the court might legitimately have found, conceding that the insertion was made by the legal holder of the note, although it was shown that the firm of Balke & Krauss only held the paper for collection, that the words "Bank of Commerce" were inserted as a mere memorandum so as to enable the said Balke & Krauss to present it for payment when it became due, inasmuch as Dixon's residence was a considerable distance from their office. The words were written in pencil, and there ap-

pears to have been no attempt to endorse the note to an innocent purchaser, or to defraud or impose upon any one. It could easily have been seen, at a glance, that they were written by a different hand from those written in ink in the body of the note, and this was sufficient to put any purchaser upon inquiry. No harm has resulted to the maker or any other person from the placing of the words in the blank space. There was no attempt at any time to treat the note as commercial paper, and, as we have said, the action is upon the note in its original form. Even if the appellee had treated the note as one governed by the law merchant, we doubt our authority to hold that the alteration was unauthorized. The note bears upon its face every evidence of one negotiable under the statute as an inland bill of exchange. It contains the usual stipulation in such paper "that the drawers and endorsers severally waive presentment for payment, protest or notice of protest and nonpayment." It also contained the incomplete sentence "Negotiable and payable at," followed by a blank space. Under such circumstances the place of payment may be filled by the holder. Rand. Com. Paper, section 186, and cases cited.

Of course, to make the paper negotiable by the law merchant, it must be made payable at a bank in this State. Section 7520, Burns' R. S. 1894 (5506 R. S. 1881). But when a bank is named in the note, without naming the state in which it is located, it will be presumed that such bank is within this State. *Indianapolis, etc., Co. v. Caven,* 53 Ind. 258; *Henderson v. Ackelmire,* 59 Ind. 540; *Clark v. Carey,* 63 Ind. 105.

Hence, if the note had been made payable at the Bank of Commerce it would have been a negotiable instrument under the statute. The words inserted were not repugnant to the plain purport and tenor of

the contract, but in harmony with it. This being so, in the absence of any agreement or direction to the contrary, would the holder not be authorized impliedly to fill up the blank space, and if so, could the note not be collected, even in its changed form, especially by an innocent holder? *Spitler, Admr.,* v. *James,* 31 Ind. 202; *Luellen* v. *Hare,* 32 Ind. 211; *Gillaspie* v. *Kelley,* 41 Ind. 158; *Blackwell* v. *Ketcham,* 53 Ind. 184; *Emmons* v. *Meeker,* 55 Ind. 321; *Marshall* v. *Drescher,* 68 Ind. 359; Rand. Com. Paper, section 123. As to this, however, we need not decide.

The rule is different, of course, where the note, perfect in its terms, is a non-negotiable one, but is changed so as to make it negotiable. *Cronkhite* v. *Nebeker,* 81 Ind. 319; *De Pauw* v. *Bank of Salem,* 126 Ind. 553, 10 L. R. A. 46. In such a case the holder would have no implied authority to change the purport of the note by filling the blank space with matter which is foreign to the apparent purpose for which the blank has been left. *McCoy* v. *Lockwood,* 71 Ind. 319.

There may also be instances when the maker would be liable to a *bona fide* holder without notice of the alteration, while not liable to the original payee or an endorsee who made the change. See *Cronkhite* v. *Nebeker, supra.*

But we have no such case here, nor do we hold that in the present case the maker is liable because he conferred an implied authority to fill up the blank space, for the appellee has not sought to hold him responsible on that ground. What we do decide is, that there was no material alteration, or at least that the trial court had the right so to conclude from the evidence.

That a material alteration of a note made by the holder will discharge the maker from liability on the

instrument there can be no doubt under the authorities. 1 Am. and Eng. Ency. of Law, 508. But in the present case there was evidence from which the court could easily have drawn the inference that the pencil writing was made as a mere memorandum, without any intent to defraud and without any intent to change the character of the obligation.

In *Horst* v. *Wagner*, 43 Ia. 373, the payee, desiring to transfer the note, ignorantly erased his own name and wrote instead the name of the transferee. He afterward restored the note to its original form and endorsed it, and it was held in an action on the note that the alteration was immaterial.

An author of recognized standing says: "There may be many cases of innocent material alterations in which it would work injury, loss, or inconvenience to confine the holder to a suit upon the original consideration. If the endorser were sued, and were held liable, he could not have the maker's note restored to him as a foundation for his action if it were utterly annihilated by the alteration. And the endorsee might have rendered such a consideration as could not be recovered back; for instance, professional services, labor, or another note. For these reasons it would seem just to allow a more specific remedy; and while we have seen no precedent which so decides, it has been suggested that a court of equity would, under its jurisdiction over mistakes, correct an alteration innocently and mistakenly made, and restore the instrument to its original form. And there is no sufficient reason why the party should not himself be permitted to undo what he has mistakenly done, provided no other person has become so situated toward the instrument that it would operate prejudicially upon him. The burden of proving innocence would be a sufficient safeguard to prior parties; and when inno-

cence is clearly proven, and the *prima facie* presumption of guilt overthrown, it would seem too rigorous to inflict upon the innocent a penalty only deserved by the guilty." 2 Daniel Negotiable Instr., section 1414.

In a Pennsylvania case, where within an hour after the note was signed, the payee returned to the maker's office, where the clerk, at the payee's request, but without the knowledge or consent of the endorser, inserted the words "with interest," the maker ratifying the action of the clerk, but subsequently the payee had the inserted words expunged, apparently with chemicals, and sued the maker upon the note in its original form, the latter resisted payment on the ground that the note had been altered, but it was held that, no fraud having been intended, the plaintiff had a right to restore it to, and sue upon it, in its original form, Thompson, C. J., saying: "Now it seems to me, that, as the identity of the note remained and there was nothing in it to enlarge the obligation of the endorser, and as what had been done was innocently, but mistakenly done and expunged for aught we know, within the hour after it had been done, there is no rule of law unreasonable enough to hold it avoided by this. I admit that if there had been evidence of a fraudulent tampering with the note, a different rule would apply. But regarding it as mistakenly done, in an attempt to make the note comply with the contract, and assented to by the original parties, one of them the principal in it, and without fraud, ought the consequences of such an act, done under such circumstances, be made to rank with fraud and perjury? It ought to be regarded as it manifestly was, to the endorser, immaterial." *Kountz* v. *Kennedy*, 63 Pa. St. 187.

In *Shepard* v. *Whetstone*, 51 Ia. 457, 1 N. W. 753, a blank in the note, after the word "at" was filled

without any fraudulent design, with the words "with ten per cent. interest from date." The note was subsequently restored to its original form and negotiated to an innocent holder without notice. It was held that he could recover on the note.

In *Am. Nat. Bank* v. *Bangs,* 42 Mo. 454, there had been added at the foot of the note, to the left of the signature, the words "at Goodyear Bros. & Durand's, New York, Jan. 10-13," after the words "due at." It was urged that this was such a material alteration as would avoid the note. The court held that the words were to be taken as a mere memorandum and, therefore, immaterial, the court saying: "It should be kept in mind that this action is against the makers themselves. It is not declared upon as a note payable at the city of New York. * * * The memorandum in this case does not increase or vary in any respect the liability of the defendants, and therefore presents no obstacle to the recovery of the plaintiff."

As said by Lotz, J., in *Kingan & Co.* v. *Silvers,* 13 Ind. App. 80: "No direct injury was done the defendants by the alteration of the note. The utmost that can be said is that a rule of public policy was violated. The doctrine of public policy, like the statute of frauds, should be invoked to prevent and not to perpetrate a fraud. A clear and unmistakable case of the violation of a rule of public policy should be made before the law will lend its aid to depriving one person of his property for the benefit of another." See also *Palmer* v. *Largent,* 5 Neb. 223; *Derby* v. *Thrall,* 44 Vt. 413.

The court did not err in overruling the demurrer to the evidence.

The judgment is affirmed.