### THE PROTECTION INSURANCE COMPANY *vs.* HENRY BILL.

The defendant gave to an insurance company, of which he became a stockholder by a transfer of stock, the following note, in the place of a like note given by the former holder of the stock: "Hartford, August 14th, 1854. $1,075. For value received, I promise to pay to the Protection Insurance Company, or their order, my second installment on forty-three shares of the stock of said company, being ten hundred and seventy-five dollars, and the same shall be paid in whole, or from time to time in part, as the same shall be required, within thirty days after demanded, or upon a notification of thirty days in any newspaper printed in Hartford. *H. B.*" Held to be a negotiable promissory note. [Dutton, J., dissenting.]

The rule that a note to be negotiable must be payable absolutely, means only that it must appear on its face that the maker's promise will be at some time absolutely enforceable, and where the event on which the time and duty of payment depend, is one over which the holder will have entire control, there is no such uncertainty regarding it as renders the note unnegotiable.

The election as to the mode of giving notice to the maker that payment was required, either by personal demand or by a notice published in a newspaper, rested wholly with the payee of the note, and the rights of the payee in this respect passed to the indorsee of the note upon its negotiation.

ASSUMPSIT on the following note:

" $1,075. HARTFORD, August 14th, 1854.

For value received, I, Henry Bill, promise to pay to the Protection Insurance Company, or their order, my second install- ment on forty-three shares of the stock of said company, being ten hundred and seventy-five dollars, and the same shall be paid in whole, or from time to time in part, as the same shall

be required, within thirty days after demanded, or upon a notification of thirty days in any newspaper printed in Hartford.

-HENRY BILL."

The note was indorsed as follows: "Protection Insurance Company, by Wm. Connor, Secretary." There was also indorsed upon it, in a printed form, a guarantee of the payment of the note.

On the trial in the superior court, on the general issue closed to the court, it was found that the note was given by the defendant upon a purchase and transfer of forty-three shares of the stock of the insurance company, in the place of a like note which the company held against the vendor of the stock, and that, on the 7th day of September, 1854, there was a large number of stock notes like the one in question held by the insurance company, which had been given by the stockholders of the company for the second installment of the capital stock of $25 on a share; and that on that day the directors of the company passed a vote requiring payment of such second installment in full on the 19th day of October, 1854, at the office of the company, of which vote by the order of the directors publication was made on the 19th of September, 1854, in two daily newspapers of the city of Hartford, where the company was located, and a copy sent by the secretary of the company to all the stockholders who were indebted upon the notes and to the defendant.

The charter of the company, after providing that the capital stock should be divided into shares of $50 each, and that an installment of $5 on a share should be paid in cash by each subscriber to the stock at the time of subscribing, contained the following provision: "The remainder of said stock shall within thirty days from said subscription be secured to be paid, by mortgage on real estate or indorsed promissory notes approved by the president and directors of said corporation, and shall be payable in thirty days after a demand shall be made in some newspaper published in the city of Hartford."

The defendant claimed that the note was a negotiable promissory note, and that it had been indorsed and delivered to indorsees before the commencement of the suit, and that an ac-

tion upon it could not be maintained by the insurance company or in its name, and offered evidence to prove such indorsement and delivery. To this evidence the plaintiffs, who contended that the note was not negotiable, objected. The court received the evidence for the purpose of finding the facts, and reserved the question as to its admissibility for the advice of this court.

The court found upon the evidence, if the same should be held admissible, that the note in suit, with all the other stock notes before mentioned, had, by a vote of the company, previously to the 7th of September, 1854, been pledged to John Warburton and others, as collateral security for sundry advances of money to the company and for sundry liabilities assumed by them for the company, and had been indorsed and delivered to them for that purpose; and that the defendant had been notified by the indorsees, before the present suit was brought, that they were the holders of the note in suit, and that payment must be made to them.

Sundry other facts were found, which are unimportant in the result, and the case was reserved for the advice of this court.

*F. Fellowes* and *C. E. Fellowes*, for the plaintiffs, contended that the note was not negotiable; citing Bayley on Bills, 15, and note to Am. edition; 1 Parsons on Prom. Notes, 40, and notes; *Jenkins* v. *Union Turnpike Co.*, 1 Caines Cas., 86; *Union Turnpike Co.* v. *Jenkins*, 1 Caines Reps., 381; *Sackett* v. *Palmer*, 25 Barb., 179; *Washington County Ins. Co.* v. *Miller*, 26 Verm., 77; *Ross* v. *Lafayette & Ind. R. R. Co.*, 6 Ind., 297; *Thorpe* v. *Booth*, Ry. & Mood., 388; *Alexander* v. *Thomas*, 16 Queen's Bench, 333.

*C. Chapman* and *J. Halsey*, for the defendant, contended that the note was negotiable, and that the action could not be maintained in the name of the original payees; citing 1 Parsons on Prom. Notes, 15, 39, 44; 2 id., 53; Story on Prom. Notes, §§ 26, 29, 41, 120; Story on Bills, §§ 60, 199; Edwards on Bills, 153; Chitty on Bills, (8th Am. ed.,) 156; *Clayton* v. *Gosling*, 5 Barn. & Cress., 360; *Dixon* v. *Nuttall*, 1 Cromp. Mees. & Ros., 307; *Goshen Turnpike Co.* v. *Hurtin*, 9 Johns.,

217; *Dutchess Cotton Manufacturing Co.* v. *Davis*, 14 id., 238; *White* v. *Haight*, 16 N. York, 310; *Howland* v. *Edmonds*, 24 id., 307; *Thorpe* v. *Booth*, Ry. & Mood., 388; *Lowery* v. *Steward*, 3 Bosw., 505; *Clark* v. *Sigourney*, 17 Conn., 511; *Central Bank* v. *Curtis*, 26 id., 533; *Lee* v. *Jilson*, 9 id., 94; *Curtis* v. *Bemis*, 26 id., 1; 2d section of charter of the plaintiffs, 1 Private Acts, 692.

SANFORD, J.  The relevancy and admissibility of the evidence introduced by the defendant to prove the indorsement of the instrument on which this suit is founded, depend entirely upon the character of that instrument, whether it is a negotiable promissory note, or a mere unassignable agreement between the original parties to it, as the plaintiffs claim.  We think it a negotiable promissory note, and therefore that the evidence was properly received.

By this instrument the defendant promises to pay to the Protection Insurance Company or order, more than thirty-five dollars, and in money only; and our statute (Rev. Stat., tit. 37, sec. 1) enacts "that all promissory notes for the amount of thirty-five dollars or more for the payment of money only, and made payable to any person or his order, or to the bearer, shall be assignable and negotiable according to the custom of merchants and the law relating to inland bills of exchange."

But the plaintiffs claim that this instrument is not a promissory note, and therefore is not within the operation of that statute, because of the stipulation which it contains that "it shall be paid in whole, or from time to time in part, as the same shall be required, within thirty days after demanded, or upon thirty days' notice in any newspaper printed in Hartford;" which stipulation, in connection with the fact appearing on the face of the note that it was given for an unpaid installment upon shares of stock held by the defendant, the plaintiffs claim renders it uncertain whether the note ever will become payable, and makes it a mere unassignable agreement between the original parties to it.

We discover no such uncertainty.  The import and character of a written instrument are to be ascertained from the

terms of the instrument itself. To those terms alone the individual to whom it is offered in the course of business will look to ascertain such character and import, and this court must be guided and governed by the same *criteria.* And by the terms of this instrument the maker of it assumes an obligation from which nothing but the payment of the money can exonerate him. The manner and time of payment, it is true, depend upon the will of the holder of the paper, and, in a certain sense of the term, it is uncertain whether he will ever exercise his right to require payment; but that is not the uncertainty contemplated by the rule. Indeed the rule on this subject has no reference to the question whether the creditor will exercise his right to enforce the debtor's obligation or will not. It relates only to the *debtor's liability* to its enforcement.

The rule referred to as laid down by judges and elementary writers is, that a promissory note within the statute of Anne and the custom of merchants, must be *payable* absolutely at all events, though it is of no consequence how long the period of its maturity may be deferred or in suspense, if it must certainly at some time arrive. Story on Bills, § 47; Chitty on Bills, 136. We suppose the meaning of the rule to be, that it must appear upon the face of the instrument that the maker's promise to pay will be at some time certainly enforceable. And where the event or condition on which the maturity of the note and the maker's liability to pay depends, is one over which the holder *pro hac vice* will have entire control, then there is no such uncertainty regarding it as affects the character of the instrument or its negotiability.

The reason of the rule illustrates its meaning. Mr. Chitty (on Bills, p. 131,) says: "It would perplex commercial transactions if paper securities of this nature, encumbered with conditions and contingencies, were allowed to have effectual circulation, and if the persons to whom they were offered in the course of negotiation were obliged to inquire when these uncertain events would probably be reduced to a certainty." Mr. Story (on Bills, § 46,) says: "A bill of exchange always implies a personal general credit, not limited or applicable to

particular circumstances or events *which can not be known to the holder of the bill* in the general course of negotiation." And Lord Ellenborough, in *Hartley* v. *Wilkinson*, 4 Maule & Selw., 25, says: "How can it be said that this note is a negotiable instrument for the payment of money absolutely, when it is apparent that the party taking it must *inquire into an extrinsic fact* in order to ascertain if it be payable." See also remarks of Lord Kenyon in *Carlos* v. *Fancourt*, 5 T. R., 485.

The necessity for inquiry in regard to extrinsic facts and contingent events, upon which the payment of securities of this kind sometimes depends, then, is the reason for denying to them the character and advantages of commercial paper. In the case at bar no occasion for such inquiry could arise. When and in what manner the money should be paid was optional with the holder of the paper, and dependent upon no contingency of which he would not have at all times entire control. To him therefore it could never be uncertain whether the note would ever become payable and enforceable or not, or in what manner it should be paid, or in which of the modes specified in the note the notice of his requisition for such payment should be given; and he could have no occasion to inquire, since he would himself determine all those questions; and so neither the credit or circulation of the paper could be embarrassed by that consideration.

Notes which in terms are made payable on demand, on request, at sight, or on presentment at some specified place, or a specified period after either of those events, are all in strictness of language payable on contingencies, because it is uncertain whether they will ever be demanded, shown, presented, &c., and so it is uncertain when such notes will mature and be enforceable, and whether they ever will be or will not. But neither the validity of such notes, nor their negotiability within the statute or the custom of merchants, is affected by such contingency, because it is one over which the holder of the paper will at all times have entire control; which he, and he alone, can reduce to a certainty at pleasure, and about which he can never have occasion to inquire. And besides, it is not to be supposed that a creditor will forego forever his right to re-

quire payment of a debt admitted to be due to him, when the exercise of that right is dependent only on his will.

That notes payable at a specified time after demand, notice, sight, presentment, or request, or any future event which is uncertain only in regard to the time of its occurrence, are notes within the custom of merchants, has often been decided. *Colehan* v. *Cooke*, Willes, 393; *Walker* v. *Roberts*, 1 Car. & Marsh., 590; *Thorpe* v. *Booth*, Ry. & Mood., 388; *Bristol* v. *Warner*, 19 Conn., 7; *Clayton* v. *Gosling*, 5 Barn. & Cress., 360. In the last case the note was payable "twelve months after notice," for value received, and Abbott, Ch. J., said: "Nor is the time of payment contingent in the strict sense of the expression, for that means a time which may or may not arrive. This note was made payable at a time which we must suppose would arrive." See also Chitty on Bills, 136; Story on Bills, § 47. In *Howland* v. *Edmonds*, 24 N. York, 307, Denio, Ch. J., says: "The principle of the authority holding that these words" (on demand) "in a note given for the payment of money do not create a condition precedent is, that the time of requiring payment is left to the uncontrolled will of the creditor. When that is found to be the case no condition is created by the statement that the money is payable on demand, or on request, or when required by the creditor, or when the language contained in this note is used." In the note in that case the language used with regard to its payment was the following: "to be paid at such times and in such portions as the directors may require." In the case of *The Goshen Turnpike Co.* v. *Hurtin*, 9 Johns., 217, by the terms of the instrument sued on as a promissory note the defendant promised to pay to the plaintiffs $125 for five shares of the capital stock of said corporation, "in such manner and proportion and at such time and place as the said plaintiffs should from time to time require," and upon demurrer to the declaration the court held that the instrument was a good promissory note within the statute, and was properly declared on as such, that it was payable in money, and payable absolutely, and not depending on any contingency, and that it was in effect payable on demand. See also *Dutchess Cotton Manufacturing*

*Co.* v. *Davis,* 14 Johns., 238. The case of *The Goshen Turn-pike Co.* v. *Hurtin* we believe has always been regarded as sound law, and if it is so it settles the question that the instrument now before us is a promissory note.

But the plaintiffs contend that the payment of this note depended upon the prior publication of a notification in a Hartford newspaper that such payment was required, that such publication might never be made, and that therefore it depended upon a contingency whether the note would ever become payable or not. This claim is founded on the assumption that the maker had a right to elect in which of the two modes specified in the note the requisition should be made and notice given. We suppose that the right of election belonged to the other party. Lord Coke says that "when an election is given of two several things, always he which is the first agent, and which ought to do the first act, shall have the election." Co. Lit., 145*a;* Bouvier Law Dic., "Election." In this case the first act, the requisition for the payment of the money, must be done by the holder of the paper. He alone could decide when payment should be made, and until such decision made and promulgated in one of the modes prescribed in the instrument, and until the expiration of thirty days thereafter, the maker was under no obligation to make payment. The argument founded on this assumption therefore fails. The creditor had a right to elect in which of the modes specified in the note the requisition should be made and notice given. The true construction of the defendant's promise in this respect is, to pay the note within thirty days after notice given in *either* of the modes specified in the instrument that payment is required. The provision in regard to notice by publication in a newspaper was inserted for the benefit of the creditor, and one which he was at liberty to avail himself of or reject at pleasure. It has none of the characteristics of a condition precedent upon which the maturity of the note or the maker's duty or liability to pay depends.

Again, it is insisted that this is a stock note, to be paid only upon the occurrence of losses which might require it, and then only in such sums as might be necessary, and after an assess-

ment laid upon the whole stock in rateable proportions. But no such purpose or intention is disclosed upon the face of the instrument, and to that alone can we look to ascertain its character and import. It does indeed appear that the note was given for an unpaid installment due upon the maker's stock, and thus the transaction out of which the debt arose, that is, the consideration for the note, is specified, but the character, import and negotiability of the instrument are unaffected by such disclosure. 1 Story on Bills, § 48; Chitty on Bills, 139. The promise to pay, and to pay the whole, and at the will of the creditor, is positive and unconditional, no allusion being made to any assessment on account of losses or for any other purpose. The only qualification of the maker's promise regards the time and manner of payment, and that qualification, depending entirely upon the will of the promisee, in no way affects the liability of the promissor to pay the whole sum at one payment, or his duty so to pay it if required. It seems to have been the object of the company to secure the balance due upon its stock subscription in such a manner that it might at all times have in hand negotiable securities, any or all of which it might resort to at will, and render available at once to meet any legitimate demand upon its treasury; a course clearly authorized, and, we think, fairly indicated by the charter to which we were referred by counsel in the argument.

The contract of the maker of a negotiable note is with the indorsee as well as with the original payee, and all the rights of the original payee, by the very terms of that contract and by operation of law, pass by indorsement and delivery to, and vest in, each successive holder, and he becomes in turn the promisee, with all the rights incident to that relation, and authorized to enforce the payment of the note in the same manner as it might have been enforced by the payee before its transfer. It follows that after the transfer of this note the determination of the questions when and in what manner its payment should be required, and in which of the modes specified the maker should be notified of such determination, belonged to the indorsees. The payee had no remaining duty in regard to them; so that the negotiation of the note could never be embarrassed

by any supposed necessity for the action of the payee in order to its maturity or enforcement.

The instrument declared on being a negotiable promissory note, the evidence in question was relevant and properly received; and the superior court having found that the note had been duly indorsed by the present plaintiffs, and delivered to the indorsees for value received, this suit can not be maintained. *Lee* v. *Filson*, 9 Conn., 94; *Curtis* v. *Bemis*, 26 Conn., 1. This conclusion renders the decision of the other questions reserved unnecessary.

Judgment should be given for the defendant.

In this opinion the other judges concurred; except Dutton, J., who dissented.

DUTTON, J.   I can not concur with the other members of the court in regarding the note in this case as a negotiable note. Such a note has certain well settled requisites, which, in my opinion, are not to be found in this.   Negotiable paper was allowed for the convenience of trade.   It passes from hand to hand as a substitute for money.   Paper must possess the general qualities of money, or it would not answer the purpose for which it is used.   Hence it is well established law that a note or bill to be negotiable must be certain as to its amount, certain as to its parties, and certain as to the time of payment. The only exceptions to this rule are after all a substantial compliance with it.   Some things which are not absolutely certain, as the performance of its obligations by government, are regarded as sufficiently certain.   So events that are certain to take place at some time, though it is uncertain, until something future has occurred, when, are considered in the same light; as for instance notes payable on the decease of a particular person.   So where the holder of a note can by his own act make the time of payment certain, this has been held to be sufficient.   Generally speaking, uncertainty as to the *amount* to be paid is fatal.   Parsons says (1 Parsons on Prom. Notes, 37,) that there are no trustworthy cases within his knowledge, holding that uncertainty as to the amount of a bill or note comes under the maxim *id certum est quod certum reddi po-*

*test.* He evidently thinks that even if the holder of a note can make the amount of it certain, where it would otherwise be uncertain, the note would not be negotiable. If this opinion is correct, and I see no reason to question it, the note in this case was not negotiable on that ground. No one by merely looking at this note could say whether the whole, or if not the whole, how much would ever become payable. The maker was to pay it, or installments of it, when calls were made and notice given, and not before.

But I do not rest my opinion chiefly on this ground. There is another, more conclusively fatal to its negotiability. The *time* of payment is not specified in the note itself, and it is not in the power of any indorsee of the note to fix it.

How then it can have the requisite quality of being a substitute for money in the hands of an indorsee is more than I can conceive.

What is this instrument? It is on the face of it a stock note. The object and meaning of such notes are as well understood among men of business as bonds or deeds. It is payable by a stockholder to the Protection Insurance Company, or their order, as the second installment of forty-three shares of the stock of the company. It is payable "in whole or from time to time in part, as the same shall be required, within thirty days after demanded, or upon a notification of thirty days in any newspaper printed in Hartford." Required by whom? Clearly by the company, that is, by the directors of the company. If it does not appear on the face of the note that the requirement and notice are to be made and given by the directors, then it is uncertain by whom it is to be done. But an indorsee can not take any title to the note, in other words it could not, if otherwise negotiable, be negotiated, unless the directors have power to indorse it. Whether they have power or not depends on the charter of the insurance company. No person therefore could safely take this note without examining the charter. If he examines that he will find, "that five dollars on each share shall be paid at the time of the subscription, and the remainder of said stock shall within thirty days from said subscription be secured to be paid,

by mortgage on real estate or indorsed promissory notes, approved by the president and directors of said corporation, and shall be payable in thirty days after a demand shall be made in some newspaper published in the city of Hartford." The demand was to be made in some newspaper published in Hartford, because the corporation was located there. It has not been and could not be questioned that this note was given in pursuance of this provision of the charter. The directors of the company understood it to be a part of their duty to give this notice, and the record shows that they did accordingly publish the call in a newspaper printed in Hartford. The charter of the company shows that five dollars of the stock was to be paid in to meet the necessary expenses of the organization of the company and to prepare for the transaction of business, and the residue of the capital stock was to be left in the hands of the stockholders till the necessities of the company should require that it should be called in. It is not probable that subscriptions could have been made if the stockholders had supposed that they would make themselves liable to pay the whole amount of the balance of their stock within thirty days after notice given by some holder of these stock notes living in New York or Boston. They did not expect to pay these stock notes except in an emergency. They felt safe in giving such notes to the company, because the directors were of their own appointment, and if they should abuse their trust by unnecessarily making calls and attempting to enforce payment of these notes, they could turn them out or stop their proceedings by injunction. It is plain from the charter as well as from the nature of these notes that the calls were to be made by the directors. I can not believe that a business man could be found in the community, whether learned in the law or not, who would not, before this litigation commenced, have said without hesitation that the payment of these notes depended on the action of the directors of the company. In a case in Massachusetts, reported since this case was decided, and which was brought by the present plaintiffs upon a guaranty of a note precisely like the one here in question, (*Protection Insurance Co.* v. *Davis,* 5 Allen, 54,) Dewey, J., in

giving the opinion of the court, says, (page 57): "It is said, however, that there was an uncertainty as to the time of payment, and that the question whether the money was to be paid in whole or in several payments was left uncertain, and that the promise was to be in those respects performed as should be required by the *payees*, after demand or upon notification of thirty days in any newspaper printed in Hartford. This is so."

The great question in the case then is this, can a note be held to be negotiable where both the liability of the maker to pay and the time of payment depend on the future action of some one besides the holder, and that person the payee? It seems to me it would violate every principle of the law of negotiable paper to hold such a note negotiable. What reliance would an indorsee put on such a note? What *certainty* would he have, if the maker was ever so responsible, that he could obtain the money? Who would take such a note in mercantile business? If the payee had indorsed the note he would be under a strong temptation never to make a demand, as in that case he never could be made liable on his indorsement. If he had indorsed it without recourse it would be a matter of indifference to him whether he made the demand or not, and the holder would be uncertain whether he ever would. Besides, in this case the demand, if this view is correct, was to be made by the directors, and they might be enjoined against making the demand.

It would require strong authority to satisfy me that such a note is negotiable, and I have been unable to find any that gives any countenance to the claim.

I am aware that where a note is payable after notice by the holder it is negotiable, but that stands on a very different ground. The holder can at any time make it equivalent to money. But where a note is not payable until after notice by some third person or persons, as where property or goods are first to be sold, (*De Forest* v. *Frary*, 6 Cowen, 151,) or thirty days after the arrival of a certain ship, (*Ex parte Tootell*, 4 Ves., 372; 1 Parsons on Prom. Notes, 39,) it is not negotiable. What difference can it make, except against the negotiability, that the third person is the payee. There are but few

authorities that bear directly upon the point, and in my judgment a correct decision depends upon the application of the rules of law regarding negotiable paper. In *Union Turnpike Co.* v. *Jenkins*, 1 Caines, 381, an agreement of a stockholder to pay for his stock was held not to be a note within the statute of New York, and in *Goshen Turnpike Co.* v. *Hurtin*, 9 Johns., 217, such an agreement was held to be a note under the same statute. But in both instances the suits were brought in the name of the companies, and in the last case the question of the negotiability of the paper came up only in relation to the consideration of the instrument, and as to this a decision was not called for, as the court held there was a sufficient consideration on the face of the instrument. In most of the other cases quoted by the counsel for the defendant instruments are held to be negotiable merely in compliance with the express provisions of the legislature. The nearest approach to a direct authority is in the case of *Washington County Insurance Co.* v. *Miller*, 26 Verm., 77. Ch. J. Redfield intimates a strong opinion that such a note would not be negotiable on account of its uncertainty.

It has been strongly insisted that such a note is within the words of our statute, and is therefore negotiable. This is the first time, it is believed, that a note under the statute of this state was ever claimed to be negotiable which had not the certainty required in bills of exchange. The records of our courts would be searched in vain for precedents of suits by the indorsee of such a note, though for money only, payable on a mere contingency, as on the marriage of some person, the birth of a child, the receipt of money from some particular quarter, or other event of a similar uncertain character. Such notes would come within the words of the statute as fully as this, yet no authority can be found in favor of their negotiability. Judge Swift, who ought, if any one, to understand this statute, says of a note, "if payable in any thing else [but money,] or at an uncertain time, or out of an uncertain fund, it is not negotiable." 1 Swift Dig., 430. The English statute, 3 and 4 Anne, is as broad in its terms as ours, and yet it has been repeatedly held there that notes payable on a contingency are

not negotiable. *Bolton* v. *Dugdale*, 4 Barn. & Adol., 619; *Worley* v. *Harrison*, 3 Adol. & El., 669; *Robins* v. *May*, 11 id., 213. To hold that a note payable on a contingency may be negotiable under our statute, would be furnishing a new and unexpected source of litigation, and I can not give my assent to it.