THE SECOND NATIONAL BANK OF RICHMOND, INDIANA, V. GEORGE W. WHEELER AND THOMAS FINLEY.

*Bills and notes—Agreement held not a promissory note—Warranty —Evidence.*

1. An *agreement* to pay a fixed sum of money at a certain date, with 7 per cent. interest from date, and 8 per cent. interest after maturity, and 5 per cent. attorney's fees, without relief from homestead valuation or appraisement laws, to which is added a waiver by the makers and indorsers of presentment for payment, protest, and notice of protest and non-payment, with right to extend the time of payment, is *not* a promissory note.

2. Where the testimony in a suit to recover the price of a machine tended to show that it was bought upon trial, and the defense set up was its failure to fill the warranty under which it was sold, testimony in support of such defense is admissible as against the vendors, or third parties to whom they had transferred a non-negotiable agreement for the payment of a part of the purchase price of the machine.

3. In a suit involving an alleged breach of warranty of a threshing separator, evidence of witnesses who were unacquainted with said machine, and had never seen it work, that separators made and sold by the same manufacturers, and of the same pat ern and size as the one in question, worked well and gave good satisfaction, is inadmissible, having no tendency to show that the machine in controversy was properly constructed and did its work well.

Error to Kalamazoo.    (Buck, J).    Argued June 6, 1889. Decided June 28, 1889.

Assumpsit.    Plaintiff brings error.    Affirmed.    The facts are stated in the opinion.

*O. T. Tuthill,* for appellant.

*Dallas Boudeman,* for defendants.

CHAMPLIN, J.    The plaintiff declared upon the following instrument as a promissory note, viz.:

"$150.                    RICHMOND, IND., July 22, 1886.

"On or before the first day of November, 1887, the sub-
scribers, of Alamo post-office, Kalamazoo county, State of
Michigan, jointly and severally promise to pay the incorpo-
rated company of Gaar, Scott & Co., or order, one hundred
and fifty dollars, payable at Kalamazoo National Bank, with
7 per cent. interest from date, and 8 per cent. after due, and
5 per cent. attorney's fees, without relief from homestead
valuation or appraisement laws, for value received.

"The makers and indorsers of this note hereby severally
waive presentment for payment, protest, and notice of pro-
test and non-payment; and the payee or holder of this note
may renew or extend the time of payment of the same from
time to time as often as required without notice, and without
prejudice to the rights of such payee or holder to enforce
payment against the makers, sureties, and indorsers, and
each of them, parties hereto, at any time when the same may
be due and payable.            GEORGE W. WHEELER.
                              "THOMAS FINLEY."

The defense was the general issue, under which the
defendants set up special matters of defense, stating that if
they ever signed the note it was part of an arrangement by
which they purchased of Gaar, Scott & Co., a threshing
separator about June, 1886.

"That the purchase price of said separator was to be $450,
—$100 to be paid by a second-hand separator, then owned by
the defendants, which they duly delivered to the said Gaar,
Scott & Co., and the balance by certain notes to be executed
by said defendants to said Gaar & Co.

"That for the purpose of making said sale and obtaining
said notes said Gaar, Scott & Co., through its agent, war-
ranted to the said defendants that the separator they pur-
chased was a first-class separator, as good as any made, and
that it would separate grain from the straw well; and that
in case it did not do so, and did not work well, defendants
were not obliged to keep it.

"That said separator was delivered to defendants; that
they attempted to operate the same; that it was not a good,
first-class separator; that it did not separate the grain from
the straw well; that said Gaar, Scott & Co. were notified of
the defect in the said separator; that they made several
attempts to remedy it, but they were not able to do so.

" That said separator was of no value, and that by reason of their using it said defendants were deprived of large sums of money in their business of running a threshing machine and separator.

"That in the month of June, 1886, after one of the servants and agents of the said Gaar, Scott & Co. had attempted to operate it, but failed in the operation of the said separator, a note, a copy of which is set forth in plaintiff's declaration, was signed by the defendants, but was not delivered to said Gaar, Scott & Co., or anybody for them, and was not intended to be delivered, and it was agreed it should not be delivered until said separator did good work and separated the grain from the straw, as it had been recommended and warranted to do; and if the said notes ever came into the hands of Gaar, Scott & Co., plaintiff in this suit, the same were fraudulently obtained by false representations, and without value received, and are not binding instruments as against defendants, and that said notes were obtained from these defendants by the false representations as to said separator, as above set forth.

"And these defendants will further show that sometime on or about the twenty-eighth of October, 1886, the said Gaar, Scott & Co., having been fully informed as to the failure of the separator to do good work, as it was warranted to do, and to separate the grain from the straw as warranted and represented, and the said Garr, Scott & Co. having without any consideration fraudulently and improperly obtained said notes, signed by said defendants, entered into a contract and agreement with the said defendants in writing, by which the said Garr, Scott & Co. agreed, in substance, that if defendants would pay their note of $50, which became due November 1, 1886, the said separator bought by defendants of Garr, Scott & Co. during the season of 1886 should be made to separate the grain from the straw in a perfect manner, as well as any other separator, before they should want to use the same during the season of 1887, and, if said Garr, Scott & Co. failed to do this, they were to take back said separator and refund the notes given for said separator, and that, in consideration of said agreement, these defendants paid said note of $50.

" That the said Garr, Scott & Co. never performed its part of said written agreement, agreed by them to be performed, never did make said separator separate the grain from the straw well, or in a perfect manner, as well as any other machine, and never made nor did they make the same to

operate in good workman-like manner; and that after said
Garr, Scott & Co. had fully failed to make said separator
work as agreed by them, said defendants delivered back to
said Garr, Scott & Co. said separator, and the same was
accepted by said company,    *    *    *    and thereupon the
contract became rescinded."

The instrument called the note, and the chattel mortgage
given to secure the payment of the same, were assigned to
the plaintiff before the time of payment named therein.   It
was shown to be an innocent purchaser for value in the regu-
lar course of business.

The instrument is not a negotiable promissory note, as is
well settled by our previous decisions.   *Lamb v. Story*, 45
Mich. 488 (8 N. W. Rep. 87), 52 Id. 525 (18 N. W. Rep.
248); *Cayuga Co. Nat'l Bank v. Purdy*, 56 Id. 6 (22 N. W.
Rep. 93); *First Nat'l Bank v. Carson*, 60 Id. 432 (27 N. W.
Rep. 589); *Altman v. Rittershofer*, 68 Id.—— (36 N. W.
Rep. 74); *Altman v. Fowler*, 70 Id.—— (37 N. W. Rep.
708).   The same defenses were therefore open to the
defendants as if the suit had been brought by Gaar, Scott
& Co.

The testimony tended to show that the defendants bought
and were using the machine upon trial, and the defense set
up under the notice was admissible as against the vendors of
the machine, and the objections to the introduction of testi-
mony to establish such defense were properly overruled.
This disposes of a large number of exceptions to the rulings
of the court.

Exception is taken to the ruling of the court in excluding
testimony offered to prove that machines made and sold by
Gaar, Scott & Co., of the same pattern and size as the one in
question, worked well and gave good satisfaction.   These
witnesses were unacquainted with the machine sold to
defendants, and had never seen it work.   Such testimony had
no tendency to show that this machine was properly con-
structed and did its work well.

We have considered all of the errors assigned, and fail to discover any error in the record, and the judgment will be affirmed.

The other Justices concurred.