Filed Oct. 10, 1893.

---

No. 841.

## OYLER ET AL. *v.* McMURRAY.

PROMISSORY NOTE.—*Negotiability.*—*Extension of Time.*—*Waiver of.*— *Meaning of "Any Extension."*—*Release.*—Where a promissory note contained the provision that "The drawers and indorsers severally waive * * * all defenses on the ground of any extension of the time of its payment that may be given by the holder or holders to them or either of them," the stipulation is binding on the parties thereto, and enforceable, but destroys the negotiability of the note as an inland bill of exchange. The expression "any extension" is in the singular, and is only binding as to one extension of time.

From the Clinton Circuit Court.

*D. W. Howe, W. A. Johnson, J. C. Suit* and *F. F. Moore,* for appellants.

*W. R. Moon, O. E. Brumbaugh* and *J. Claybaugh,* for appellee.

DAVIS, J.—The appellee instituted this action in the

court below against the appellants, Samuel P. Oyler, Allen Sexson, and Greenup Sexson. The complaint was upon a promissory note and the indorsement thereon, of which the following is a copy:

"$1,000.    FRANKFORT, INDIANA, January 1, 1887.

"One year after date we, or either of us, promise to pay to the order of James S. McMurray, one thousand dollars, with interest at the rate of eight per cent. from date, and ten per cent. attorney's fees; value received, without any relief whatever from valuation or appraisement laws. The drawers and indorsers severally waive presentment for payment, protest and notice of protest, and nonpayment of this note, and all defenses on the ground of any extension of the time of its payment that may be given by the holder or holders to them or either of them.         (Signed)    G. SEXSON,

"Due January 1st, 1888.         ALLEN SEXSON.

"(Indorsed)    SAMUEL P. OYLER."

The complaint proceeds on the theory that all the appellants executed the note as joint promisors.

Appellant Oyler filed a separate answer in four paragraphs, but, so far as the questions presented for our consideration are concerned, it is not necessary to notice either the first or fourth paragraph.

The second paragraph alleged that appellant Oyler executed the note sued on, as surety only, for his co-defendants, Greenup Sexson and Allen Sexson, the principals, and that the payee (the appellee) had afterwards, pursuant to an agreement between him and said Greenup Sexson (the consideration and terms of which are fully set forth), and without the knowledge or consent of appellant Oyler, extended the time of the payment of said note for one year.

The third paragraph alleged that appellant Oyler executed the note sued on as accommodation indorser only,

for his co-defendants, and that the payee had afterwards, pursuant to three several agreements made between him and said Greenup Sexson (the consideration and terms of which are fully set forth), and, without the knowledge or consent of appellant Oyler, extended the time for the payment of said note three several times—first, from January 1, 1888, to January 1, 1889; second, from January 1, 1889, to January 1, 1890; third, from January 1, 1890, to January 1, 1891. Demurrers, alleging insufficiency of facts, were sustained to each of said paragraphs of answer, appellant Oyler excepting. There was a trial resulting in a judgment against all the defendants, from which all prayed an appeal.

The errors assigned by Oyler are that the court erred in sustaining demurrers to the second and third paragraphs of his answer. The errors assigned by the other appellants have been waived by failure to discuss them.

The first question to determine is whether the note is negotiable as an inland bill of exchange. The statute provides that "notes payable to order or bearer in a bank in this State shall be negotiable as inland bills of exchange, and the payees and indorsers thereof may recover as in case of such bills." Section 5506, R. S. 1881.

The statute does not provide what shall constitute a note, but the term, as used in the section quoted, must be understood in the sense it was then used and defined under the law merchant in the commercial world. *Melton* v. *Gibson*, 97 Ind. 158; *Glidden* v. *Henry*, 104 Ind. 278.

One of the essentials of a negotiable promissory note is certainty as to the time when payment is to be made. 1 Parsons on Notes and Bills, p. 30; *Glidden* v. *Henry, supra*.

The stipulation in this note is in these words:

"The drawers and indorsers severally waive presentment for payment, protest and notice of protest, and non-

payment of this note, and all defenses on the ground of any extension of the time of its payment that may be given by the holder or holders to them or either of them.''

This language evidently means that ''the holder or holders of this note may, before or after January 1, 1888, extend the time of its payment so as to make it payable at a later date, and the drawers and endorsers severally waive * * * all defenses on the ground of any extension of the time of its payment that may be given by the holder or holders to them or either of them.''

The stipulation is binding on the parties thereto, and is enforceable, but necessarily, under the authorities, destroys the negotiability of the note as an inland bill of exchange. Daniel on Neg. Inst., section 62; *Glidden* v. *Henry, supra; Coffin* v. *Spencer,* 39 Fed. Rep. 262; *Second Nat'l Bank* v. *Wheeler,* 75 Mich. 546; *Woodbury* v. *Roberts,* 59 Ia. 348; *Smith* v. *Van Blarcom,* 45 Mich. 371; *Hodge* v. *Farmers' Bank,* 7 Ind. App. 94, 34 N. E. Rep. 123.

It is contended, however, by counsel for appellee, on the authority of *Brown* v. *First Nat'l Bank,* 115 Ind. 572, that the stipulation in the note in suit is distinguishable and materially different from that in the note on which the decision in *Glidden* v. *Henry* is based.

It is true the notes are different in form, but they are not, so far as this question is concerned, different in principle. The holder was not bound, by the stipulation in either case, to extend the time of payment. The material and controlling fact is that the holder had the option, at any time before, as well as after, the time of payment stated in the note, to extend to the drawers and endorsers, or either of them, the time of payment. The principle which underlies the rule enunciated in the cases cited is well stated by Judge ZOLLARS, in *Glidden*

Oyler *et al. v.* McMurray.

v. *Henry, supra,* as follows: "The condition is not that something may happen, or be done, that will mature the note before the time named, thus leaving that time as fixed and certain, if the thing do not happen, or be not done; but the condition is that the time named may be displaced by another, uncertain and indefinite time, as the parties may agree."

It is earnestly contended by counsel for appellant, inasmuch as the note is not negotiable by the law merchant, that said Oyler can not be regarded as an indorser, but that he is a surety who has been discharged from liability by the one extension of time pleaded in the second paragraph of his answer.

It is true that, strictly speaking, Oyler, under the circumstances disclosed in the present case, does not stand in the relation of an indorser, under the law merchant. *Pool* v. *Anderson,* 116 Ind. 88.

The word "drawers" appears to have been used in the note in suit as synonymous with the word "makers." The allegations in the complaint, in connection with the copy of the note and indorsement therewith filed, show that Oyler signed his name across the back of the note, at or before the delivery thereof, as one of the makers. This is not controverted in the answer, wherein he alleges that he executed the note as surety.

In *Pool* v. *Anderson, supra,* Judge MITCHELL says: "As has been remarked, it will be assumed that one who signs his name upon the back of a note, whatever its description may be, does so for some purpose, and that he intends to become responsible for its payment in pursuance of some contractual obligation. If, therefore, the law imports into the transaction no contract whatever, and there is no possibility of raising the ordinary obligation of indorser, it must be assumed, until it appears whether any contract different from that written on the

apper was entered into, and what the character of that contract was, that all those, other than the payee, who signed before the execution of the paper, whether upon the face or back, intended to become bound according to the terms of the note as joint promisors.''

Although his name does not appear on the face of the note, he may properly, under the circumstances, be called a ''surety drawer,'' surety maker, or surety promisor. Section 95, Daniel on Neg. Inst.; Anderson's Dictionary of Law, pp. 995, 996; 2 Am. and Eng. Encyc. of Law, 315, 316; Brandt on Suretyship, section 1.

In any view, however, which may be taken of this question, it would be an extremely technical construction of the stipulation contained in the note to hold that he was not bound by the terms of the agreement to waive defense on the ground of any extension of the time of payment. He evidently became bound by the terms of the contract which he signed. It is conceded that he became responsible by virtue of having signed the note, and if he did not incur the liability of an indorser of commercial paper, he must be regarded as a joint maker or drawer of a note not negotiable under the law merchant. If we are correct in this conclusion, then, for the reasons stated, he was not released, although he was in fact surety, by the extension of time mentioned in the second paragraph of the answer. In other words, the stipulation in question constituted a valid and enforcible agreement binding on all the parties who joined in the execution of the note. Because the note was not negotiable, under the statute, as an inland bill of exchange, does not destroy the force of the agreement as to appellant, by reason of the fact that he signed his name on the back of the note.

Without prolonging the discussion, it will suffice to say our conclusion is that the court did not err in

sustaining the demurrer to the second paragraph of the answer.

The third paragraph, however, in our opinion, states facts sufficient to constitute a defense to the cause of action. The term, "any extension," is used in the singular sense. It was not intended for an indefinite number of extensions of the time of payment. When the appellee, at the end of one year from the date of the note, extended the time of payment until January 1, 1889, such extension was in accordance with the agreement of the parties, as we have before stated, and all the parties, including appellant Oyler, were bound by it, and he was not thereby discharged. The agreement, however, contained in the stipulation in the note was met and satisfied by that extension. The other extensions, or any of them, if made as alleged, had the effect of discharging him. *Rochester Savings Bank* v. *Chick*, 64 N. H. 410.

In *Rogers* v. *Warner*, 8 Johns. 119, a letter of credit was given, stating, "our sons wish to take goods of you on credit. We are willing to lend our names as security for any amount they may wish," and, it was held, "the true construction of the letter of credit is, that it is to be confined to the first parcel of goods."

In another case, a father wrote that he would hold himself accountable for "any sum" that his son might become indebted, not exceeding $200, and it was held that "the words are evidently satisfied, when any one indebtedness is incurred." *White* v. *Reed*, 15 Conn. 457.

In another case, the language was, "I will guarantee the payment of any goods you may sell him," and it was held to refer "to but one transaction, and not to a number of transactions." *Schwartz* v. *Hyman*, 107 N. Y. 562.

When the word "any" is used in a plural sense, a dif-

ferent rule applies, as, for instance, "any facts and circumstances." *Heaton* v. *Wright*, 10 How. Pr. 79 (83). "Any creditors include all creditors." *Livermore* v. *Swasey*, 7 Mass. 213 (227); and, see, also, *Tillou* v. *Britton*, 9 N. J. Law, 120 (128).

The language of the stipulation, however, in this case, is not "any extensions," in the plural; but simply "any extension," in the singular.

While the pleader, in framing the third paragraph of the answer, may not, in view of the conclusion reached by us, have proceeded, in all respects, upon a strictly correct theory, yet, as the facts pleaded, for the reasons stated, show, if true, that at least two unauthorized extensions of the time of payment have been made in such manner as to release the surety, the answer is sufficient to constitute a defense to the action, and, therefore, the judgment of the court below is reversed, with instructions to overrule the demurrer to the third paragraph of the answer, and for further proceedings not inconsistent with this opinion.

Filed Oct. 13, 1893.