(116 N. W. 751.)

---

FIRST NATIONAL BANK OF POMEROY, IOWA, A PRIVATE CORPORATION v. J. K. BUTTERY.

Opinion filed February 11, 1908.

Rehearing denied May 12, 1908.

**Negotiable Instruments — "On or Before" — Agreement for Extension —Waiver of Protest.**

> The negotiable quality of a promissory note is not destroyed by a provision therein that the makers and indorsers thereof severally waive presentment of payment and notice of protest, and consent that the time of payment may be extended without notice, when by its terms it is made payable on or before a day named.

Appeal from District Court, Grand Forks County; *Fisk, J.*

Action by the First National Bank of Pomeroy against J. K. Buttery. Judgment for defendant, and plaintiff appeals.

Reversed.

*Skulason & Skulason,* for appellant.

A note payable on a date certain or before upon a contingency is negotiable. Phelps v. Sargent, 71 N. W. 927; Coda v. Buck, 7 Metc. 588; Walker v. Woolen, 54 Ind. 164; Charlton v. Reed, 16

N. W. 64; Eaton & Gilbreath, Com. Paper, 220; 4 Am. & Eng. Enc. Law, 93; 7 Cyc. 599; Stevens v. Blunt, 7 Mass. 240; Goodloe v. Taylor, 10 N. C. 458; Ernst v. Steckman, 15 Am. St. Rep. 542.

Date of maturity is certain, and the rights of a transferee are unaffected. National Bank of Commerce v. Kenney, 83 S. W. 326; Capron v. Capron, 44 Vt. 410; Protection Ins. Co. v. Bill, 31 Conn. 534; Farmer v. Bank, 107 N. W. 170.

*J. H. Bosard,* for respondent on appeal.

*Scott Rex,* for respondent on application for rehearing.

A provision in a note that payee or holder may extend time of payment renders the note non-negotiable. Rosenthal v. Rambo, 62 N. E. 637; Matchett v. Anderson Machine Works, 64 N. E. 229; Woodbury v. Roberts, 13 N. W. 312; Glidden v. Henry, 1 N. E. 369; McClellan v. Norfolk Southern Co., 18 N. E. 237; Coffin v. Spencer, 39 Fed. 262; Second Nat. Bank v. Wheeler, 42 N. W. 963; Mer. & Mech. Sav. Bank v. Fraze, 53 Am. St. Rep. 341.

SPALDING, J. This is an action on a promissory note. The note was sued on by the indorsee for value before maturity, and the court found that there was a failure of consideration, and that the contract was not a negotiable note, and entered judgment for the dismissal of the action. Only one question requires consideration. If the instrument in question is a negotiable promissory note, the judgment should be reversed; otherwise, it should be affirmed.

The note was made in this state, and is payable at Sioux City, Iowa, and the clause which the trial court held rendered it non-negotiable reads: "The makers and indorsers herein, severally waive presentment of payment and notice of protest, and consent that the time of payment may be extended without notice." There is an apparent conflict of authorities as to whether this or similar agreements render a note nonnegotiable. The note is, by its terms, made payable on or before the 1st of October, 1903. Without the paragraph complained of, it would unquestionably be a negotiable instrument, and the indorsers would be released by any extension of time of payment without their assent. We are of the opinion that this provision does not extend the time of payment indefinitely or render it uncertain. The time of payment is already fixed.

It is strenuously argued that the use of the word "makers" in the waiver admits of an extension being made at any time on the part of the holder, by a mere secret mental process, unknown to any

other party. This may be true as a psychological fact, but we do not deem it so as a matter of practice in commerce and banking. To us it is clear that it has the same effect as though the note read "on the 1st day of October, 1903, or thereafter on demand," in which case there would be no question of its negotiability. Holders of notes do not by a secret mental process make an extension of the time of payment, but such extension, if made at all, is made by an agreement between the principal debtor and the holder of the paper, either with or without the consent of the indorsers. This provision seems to us to have been inserted to protect the holder against any release of indorsers or others, by an extension without their assent, and the word "makers" is evidently included to prevent any misunderstanding or misconstruction of the contract or failure to distinguish between makers, indorsers, sureties, and any other parties who might be or become liable theron under certain contingencies as makers. 7 Cyc. 614. This phrase does not express an agreement to extend time, but leaves the matter of extension optional with the holder, and not obligatory upon him, and the note on its face fixes the time when it becomes due. In this respect it must be distinguished from a provision to the effect that the time of payment shall be extended indefinitely, in which case the uncertainty of the time renders the instrument nonnegotiable.

We feel that the reasoning in the National Bank of Commerce v. Kenney (Tex. Sup.) 83 S. W. 368, is not only satisfactory, but conclusive of this point. The note involved in that case contained this provision: "The makers and indorsers hereof hereby severally waive protest, demand, and notice of protest and nonpayment in case this note is not paid at maturity, and agree to all extensions and partial payments before or after maturity, without prejudice to the holder." In holding that this provision did not render the note nonnegotiable, the Texas court says: "If, as is argued, the effect of the stipulation is to give the right to the maker, without the consent of the holder, or to the holder without the consent of the maker to appoint another date of payment, and thereby extend the time, it may be that it would render the instrument nonnegotiable. But we do not think it capable of that construction. It does not say that either the holder or the maker may extend the note. It simply makes a provision in case the time of payment may be extended. How extended? It seems to us that the extention meant is that which takes place when the debtor and creditor make an

agreement upon a valuable consideration for the payment of the debt on some day subsequent to that previously stipulated. The obvious purpose of the stipulation taken as a whole was merely to relieve the holder of the paper from the burdens made necessary by the rigid requirements of the mercantile law in order to secure the continued liability of the indorsers and sureties on the paper. Therefore what was meant by the stipulation as to extension of time was simply that in case the holder and maker should agree upon an extension the sureties and indorsers should not be discharged. The holder and maker of a note may at any time agree upon an extension; therefore, the fact that they have that right does not affect the negotiability of the paper. It is usually said that, in order to make an instrument negotiable under the law merchant, the time of payment must be certain. But a note payable on or before a certain date is negotiable. The maker of such a note has the right to pay before the date named, but the holder cannot demand payment before that date. So, in this case, the time at which the maker may elect to pay is uncertain, but the time at which the holder may demand payment is certain. It follows that if the holder has the absolute right to demand payment at a certain date, the note is negotiable. This is but an illustration of what we understand to be the general rule. There being nothing in the stipulation under consideration, which gave any one the right to demand of the holder of the note an extension of the time of payment, we think the time at which he could demand payment was fixed, and that, therefore, it was a negotiable note."

In Capron v. Capron, 44 Vt. 410, a note which contained the provision that "if there is not enough realized by good management in one year to have more time to pay" was held negotiable. See, also, Protection Insurance Company v. Bill, 31 Conn. 534; Farmer et al. v. Bank, 107 N. W. 170.

In Jacobs v. Gibson, 77 Mo. App. 244, the court held that an agreement that the time of payment might be extended without notice did not destroy its negotiability, and said: "The time of payment which is 182 days after date is certain, and if the holder exercises his option under the extension clause, and fixes another time, that time will be none the less certain. In legal effect we cannot discover that the agreement contained in the extension clause is different from that in a bill of exchange or promissory note which is payable at sight or on demand, or on or before maturity."

In Bank v. Commission Company, 93 Mo. App. 123, the court says: "The makers and indorsers agree to any extensions or partial payments before or after maturity without prejudice to the holder," and that the note according to its terms amounts to no more than an agreement that in the event of an extension of time, the holder should not be prejudiced thereby. Under this agreement the holder was given the option to extend the time of payment without thereby creating the right to defend on that ground. In the exercise 'of this option, the holder would still retain the right to fix the time when the note should become due.    There is a plain distinction between the clause in this note, and those in most of the cases cited as authority for the contention of the respondent, and this distinction has been made by the recent Iowa case cited above.   The court of that state in Farmer et al. v. Bank, supra, says: "In one branch of his argument, counsel bases a contention upon the assumption that the notes held by plaintiffs were nonnegotiable, and this, because of the provision therein respecting sureties.   The assumption is not warranted.   As we think, the notes met all the requirements for negotiable instruments.   There was no uncertainty as to the payee, the amount, or the time of payment.   We may concede that in the case of an instrument providing in terms for the extension of time of payment indefinitely, there is such uncertainty as to make the same nonnegotiable.   And such are the cases of Miller v. Poage, 56 Iowa, 96, 8 N. W. 799, 41 Am. St. Rep. 82, and Woodbury v. Roberts, 59 Iowa 348, 13 N. W. 312, 44 Am. St. Rep. 685, cited and relied upon by counsel.   But in the notes before us, we have a distinct and unqualified agreement on the part of the makers to pay on a certain date.   And we perceive no good reason for holding that the negotiable character thereof is destroyed because of a clause embodied therein providing that a surety, if such there shall be, will not claim a release from his collateral liability on the instrument, if, forsooth, an extension of time shall be granted the makers without notice to him.   Our attention has been called to no case so holding.   As well say that where sureties, guarantors, and indorsers entitled to notice of payment, waive the requirement for such notice, the waiver must be given operation to destroy the negotiable character of the instrument.   The doctrine of the courts seems to be that when the maker's promise will at some time be absolutely enforceable, and where the event on which the time and duty of payment depends is one over which the holder will have

entire control, there is no such uncertainty regarding it as renders the note nonnegotiable." See Protection Insurance Co. v. Bill; 31 Conn. 534, and cases cited therein. So much for authorities sustaining its negotiability.

We are, however, of the opinion that, under the plain terms of the negotiable instruments act of this state, this note is negotiable, without reference to other authority.

Section 6486, Revised Codes 1905, defines a negotiable promissory note as follows: "A negotiable promissory note within the meaning of this chapter is an unconditional promise in writing, made by one person to another, signed by the maker, engaging to pay on demand, or at a fixed or a determinable future time, a certain sum of money, to order or to bearer." Section 6309 provides that an instrument is "payable on demand. * * * 2. In which no time for payment is expressed." Section 6422 provides how such an instrument is "discharged against a person secondarily liable thereon." Paragraph 6 thereof provides that it is discharged by any agreement binding upon the holder to extend time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right to recourse against such party is expressly reserved.

If, as is contended by the respondent in the case at bar, this instrument, taken as a whole, expresses no time for payment, then, under section 6309, it is an instrument payable on demand, and according to section 6486 the negotiability of a promissory note is not destroyed by its being made payable on demand. On the other hand, if it does express a time for payment, the 1st day of October, 1903, is a fixed and determinable future time as required by section 6486, supra. This note was executed and dated within this state, and we are satisfied that the paragraph complained of as rendering it nonnegotiable was drawn for the express purpose of protecting it within the terms of paragraph 6, section 6422, above quoted, and in accordance with other statutory provisions providing for waiver of presentment, notice of dishonor, and protest. Notes containing clauses similar to the one in question have been in almost universal use in this state for years, and the identical waiver complained of has been in common use, and the instruments containing them have been regarded and treated by the trade and bankers as negotiable.

For the reason stated, the judgment of the district court is reversed.

POLLOCK, District Judge, concurs.

FISK, J., disqualified; HON. CHAS. A. POLLOCK, judge of the Third judicial district, sitting by request.

MORGAN, C. J. (dissenting). I am unable to concur in the conclusion reached by my associates in this case. \ My reason for reaching an opposite conclusion may be briefly stated.

The statute in express terms requires that the time of payment must be definitely stated in the note or that it can be definitely determined therefrom when it becomes payable, or it will be rendered non-negotiable. From the face of the note, it seems to me conclusive that it does not show when the note may become due and payable in view of the fact also stated therein that an extension may become operative and binding. It does not seem to me to be a sound conclusion to say that the note states a fixed day of payment when it also states that the day stated may not represent the date of payment if the stipulation as to an extension that follows is put into effect. The note cannot be said to be a demand note, as by its very terms it is not such. It fixes day of payment, subject to extensions. So far as having no fixed day of payment is concerned, the time is rendered as uncertain by reason of possible extensions as it would be if it provided for extensions indefinitely, and is therefore fairly within the principles of the Iowa cases cited in the opinion. In Bank v. Gunter, 67 Kan. 227, 72 Pac. 842, the note contained this stipulation: "The makers and endorsers hereby severally * * * agree to all extensions * * * before or after maturity without prejudice to the holder," and in reference to the effect thereof upon the negotiability of the note, the court said: "In the note in question, payment is first fixed at 182 days after the date, but as will be observed, a later provision makes the time indefinite by stipulating that it may be changed and extended either before or after maturity. If the time is to remain fixed until maturity, when another time is to be fixed by the parties, or if payment is made to depend upon events which necessarily must occur, and the time of payment is ultimately certain, other considerations would arise; but here payment is not ultimately certain, for the time stated in the paper is subject to change at any time at the volition of some of the parties to the action."

In Coffin v. Spencer (C. C.) 39 Fed. 262, the court said in reference to a similar stipulation: "Every successive taker of the paper is, of course, bound to take notice of the stipulation, and, instead of looking only to the face of the instrument for the time of its maturity, as in case of commercial paper he must, is put upon inquiry whether or not any agreement for a renewal or extension of time has been made by his proposed assignor or by any previous holder."

In Oyler v. McMurray, 7 Ind. App. 645, 34 N. E. 1004, the court said in speaking of a like stipulation: "The holder was not bound by the stipulation in either case to extend the time of payment. The material and controlling fact is that the holder had the option, at any time before as well as after the time of payment stated in the note, to extend to the drawers and indorsers, or either of them, the time of payment."

The following authorities specifically hold that stipulations like the one contained in the note in suit render the note non-negotiable: 7 Cyc. 600, and cases cited; Daniel on Neg. Inst. (5th Ed.) p. 49; Eaton & Gilbert on Commercial Paper, p. 220; Smith v. Van Blarcom, 45 Mich. 371, 8 N. W. 90; Woodbury v. Roberts, 59 Iowa, 348, 13 N. W. 312, 44 Am. St. Rep. 685; Hodge v. Farmers' Bank of Frankfort, 7 Ind. App. 94, 34 N. E. 123; Oyler v. McMurray, 7 Ind. App. 645, 34 N. E. 1004; Glidden v. Henry, 104 Ind. 278, 1 N. E. 369, 54 Am. St. Rep. 316; Rosenthal v. Rambo, 28 Ind. App. 265, 62 N. E. 637; Id., 165 Ind. 584, 76 N. E. 404, 3 L. R. A. (N. S.) 678; Evans v. Odem, 30 Ind. App. 207, 65 N. E. 755; Second National Bank v. Wheeler, 75 Mich. 546, 42 N. W. 963; Lamb v. Storey, 45 Mich. 488, 8 N. W. 87; Citizens' Nat. Bank v. Piollet, 126 Pa. St. 194, 17 Atl. 603, 4 L. R. A. 190, 12 Am. St. Rep. 860.

On principal and authority, the note should be held non-negotiable.

## ON REHEARING.

SPALDING, J. This case was argued at the March, 1907, term of this court by counsel for respondent, and was submitted by appellant on its brief.

The findings of the trial court wholly failed to show on what ground or grounds it held the note in question nonnegotiable. The brief of respondent discussed only the ground mentioned in our opinion, and the writer has a distinct recollection that respondent's

counsel stated in his argument that, although on the trial in the district court he had contended and believed the note to be non-negotiable for each of several reasons, on examining authorities in the preparation of his brief on appeal, he had concluded that the note was nonnegotiable only on the ground referred to in our opinion. Whether such statement was made or not is, however, entirely immaterial. Respondent argued but one question either orally, or in his brief, and relied only on that as a ground for affirmance. It therefore expressly or impliedly waived all other reasons which might have been advanced to sustain the judgment of the trial court, and thereby conceded the correctness of the contention of the appellant on all except the one ground. The learned counsel who argued the case and prepared the brief for respondent has since deceased, and a petition for rehearing is presented by new counsel, who, doubtless, was unaware of what transpired on the argument, and who, in his petition for rehearing discusses questions thus waived. Under such or any ordinary circumstances, it would be highly injudicious and unjust to now open the case for the purpose of permitting respondent to present points which were waived on the original argument. It, in effect, would be permitting the respondent to speculate on the outcome of the case, and, when defeated, to reopen it to present matters which he might have presented, but waived on the first argument.

This court has repeatedly held that the appellant waives all errors not discussed on his argument or in his brief, and we see no reason for making any distinction between appellant and respondent in such case. This view of the matter is supported by ample authority.

In this case no decisive question submitted by counsel for respondent has been overlooked by the court, and it never considered any of the reasons now alleged for holding the note nonnegotiable. It was not asked to do so. It relied, as it had a right to do, upon the contention of the respondent. We are not saying that a case might not be presented where counsel had overlooked points in his favor which, on being presented in a petition for rehearing, might entitle him to a reargument, but we are saying that under the circumstances of this case, it would be out of harmony with all rules intended to protect parties, and preserve their rights to permit it. See 18 Enc. Pl. & Pr. 37, and cases cited; also Id. p. 43 (d); also 3 Cyc. 214 (i).

For these reasons, the petition is denied.