SECURITY NATIONAL BANK, Respondent, v.
GUNDERSON, Appellant.

(216 N. W. 595.)

(File No. 6095. Opinion filed December 13, 1927.)

26

*Payne, Olson & Barton,* of Vermillion, for Appellant.
*Lyon, Bradford & Grigsby,* of Sioux Falls, for Respondent.

MISER, C. The promissory note in suit contains the following language:

"The makers, indorsers, and guarantors of this note, and the sureties hereon, severally waive presentment for payment, protest and notice of dishonor, and consent that the time of its payment may be extended without notice, all defenses on the ground of any extension of time of payment being hereby expressly waived."

Appellant contends that the note is non-negotiable because this clause offends against the requirement of both sections 1708 and 1886, Rev. Code 1919, that a note be payable at a determinable future time. In support thereof, appellant cites decisions from Idaho, Indiana, Michigan, Pennsylvania, Iowa, and Kansas, as well as Coffin v. Spencer (C. C.) 39 F. 262. Respondent, who contends that this clause does not render the note non-negotiable, cites decisions from Colorado, Louisiana, Missouri, Nebraska, New Mexico, North Dakota, Oklahoma, Tennessee, Texas, and Utah. In Brannan's Negotiable Instruments Law, 4th Ed., at pages 870 and 871, also, 3d Ed. p. 390, decisions from the courts of the states above named are considered, including most of those cited by either appellant or respondent. In addition thereto, Brannan cites decisions from California, Illinois, Iowa, Massachusetts, and Wyoming holding instruments containing clauses more or less similar to be negotiable. That author sums up the intent of such clauses in the following language:

"They seem intended merely to prevent the discharge of secondary parties by extensions of time, but not to alter the specified date of maturity, unless there is an expressed agreement between maker and holder for such an extension subsequent to the execution of the note. In the great majority of cases, since the Negotiable Instruments Law, such provisions have not been held to impair the negotiability of the instrument."

To the same effect see Joyce's Defenses to Commercial Paper (2d Ed.) vol. 1, p. 24.

In Book 5 of Uniform Laws Annotated, published by Edward Thompson Company, being the volume devoted to the Negotiable Instruments Law, in the annotations under section 4 thereof, a like compilation of authorities, both pro and con, citing in the main the same cases, is found. A comparison of the more recent decisions, while confirming the disagreement of the authorities on this question, indicates that the trend of opinion is toward the view that such a clause does not destroy a note's negotiability. The view that negotiability is destroyed finds recent support in Central Nat. Bank v. Engler, 112 Kan. 708, 212 P. 656; while the view that negotiability is not destroyed finds support in Russell v. Wyant, 214 Mo. 377, 253 S. W. 790; McCornick v. Nielson, 64 Utah 605, 233 P. 122; McDonald v. Mulkey, 22 Wyo. 144, 231 P. 662. Furthermore, certain decisions by the courts of Iowa and Indiana lend weight to the view that negotiability is not destroyed. See Farmer v. Bank of Graettinger, 130 Iowa 469, 107 N. W. 170; American Bank & Trust Co. v. Ragsdale, 74 Ind. App. 367, 129 N. E. 59.

Appellant, however, contends that Brannan and other text-writers are in error in holding that the weight of authority supports the view that such a clause does not destroy the negotiability of a note. Appellant contends—

"that the language of the clause is plain that the maker may make with any holder an agreement for extension; likewise the indorser may do the same; neither can object to the contract made by the other. The permission plainly permits not only indefinite and uncertain changes in the due date of the note, but permits changes that are practically unascertainable."

While this contention of counsel for appellant is not in all respects the same as the contention of counsel holding like views in the case of First National Bank of Pomeroy v. Buttery, 17 N. D. 326, 116 N. W. 341, 16 L. R. A. (N. S.) 878, 17 Ann Cas. 52, yet we believe the Supreme Court of North Dakota has therein answered the contentions which counsel for appellant herein so ably presents. Spalding, J., wrote the opinion of the court holding the note negotiable. Fish, J., being disqualified, Pollock, District Judge, sat in his stead. The able dissenting opinion of Morgan, C. J., expressed the views and assembled the authorities holding such notes non-negotiable. Not only the fact that the majority

opinion has been so frequently cited both by courts and text-writers, but the fact that the Uniform Negotiable Instruments Act had then been adopted in North Dakota nine years before, and since then adopted in every state of the Union, gives this opinion weight in construing sections 1708 and 1886 of our Code, which are sections 4 and 184 respectively of the Uniform Negotiable Instruments Act. Therein the court said:

"Holders of notes do not by a secret mental process make an extension of the time of payment, but such extension, if made at all, is made by an agreement between the principal debtor and the holder of the paper, either with or without the consent of the indorsers. This provision seems to us to have been inserted to protect the holder against any release of indorsers, or others, by an extension without their assent, and the word 'makers' is evidently included to prevent any misunderstanding or misconstruction of the contract or failure to distinguish between makers, indorsers, sureties, and any other parties who might be or become liable thereon under certain contingencies as makers. 7 Cyc. 614. This phrase does not express an agreement to extend time, but leaves the matter of extension optional with the holder, and not obligatory upon him, and the note on its face fixes the time when it becomes due."

Therein the North Dakota court quotes with approval the following reasoning in the National Bank of Commerce v. Kenney, 98 Tex. 293, 83 S. W. 368:

"The obvious purpose of the provision taken as a whole was merely to relieve the holder of the paper from the burdens made necessary by the rigid requirements of the mercantile law in order to secure the continued liability of the indorsers and sureties upon the paper. Therefore what was meant by the stipulation as to the extension of time was simply that in case the holder and the maker should agree upon an extension, the sureties and indorsers should not be discharged. The holder and maker of any note may at any time agree upon an extension; therefore the fact that they have that right does not affect the negotiability of the paper."

Counsel for the appellant insist that the foregoing treatment of the clause in question by the North Dakota court is nothing less than an emasculation of language, and that the reason for the court's opinion is found in its closing words, as follows:

"Notes containing clauses similar to the one in question have been in almost universal use in this state for years, and the identical waiver complained of has been in common use, and the instruments containing them have been regarded and treated by the trade and bankers as negotiable."

If, in this, counsel be right, it might yet be said that the great law merchant, the common ancestor of the British Bills of Exchange Act and the Uniform Negotiable Instruments Act, had its origin also in the usages of trade. In South Dakota, such notes have had 19 additional years of negotiation and acceptance since the North Dakota opinion was handed down; and for this court, at this time, to hold such notes non-negotiable, would, in effect, be an act of judicial legislation. However, the Supreme Court of Utah gives better expression to our reason for holding the note in question negotiable wherein, after quoting Brannan's Negotiable Instruments Law as hereinbefore quoted, it says:

"Uniformity in construction of the several provisions of the Negotiable Instruments Law is essential, if the objects sought by the act are to be attained. In addition, the reasoning of the courts, which hold that like provisions do not make the instrument non-negotiable, appeals to us as bottomed on sound logic, and as being in conformity with legal principles." McCornick et al v. Nielson, 64 Utah 605, 233 P. 122.

Respondent contends that the judgment and order appealed from must be affirmed, not only because the note in question is negotiable, but for other reasons. It contends that there was no competent evidence to establish the defense of false representation in the sale of the bank stock for which the original note was given, and also that defendant was estopped by his conduct in four times renewing his note after he must have known facts which he pleads he did not discover until after respondent became the due course holder of the fourth renewal note. Inasmuch, however, as appellant concedes that, if the note be negotiable—and we so hold—the judgment and order appealed from must be affirmed, it is unnecessary to consider the other reasons urged by respondent for so holding.

The judgment and order appealed from are affirmed.

CAMPBELL, P. J., and GATES, POLLEY, SHERWOOD, and BURCH, JJ., concur.